MARVIN WARREN, APPELLANT, v. E. D. BROWN ET AL., APPELLEES.

[FILED DECEMBER 22, 1890.]

1. **Highways:** ESTABLISHMENT: JURISDICTION: A COUNTY BOARD has no jurisdiction to establish a public road, when no commissioner has been appointed to examine into and report

upon its expediency, unless the written consent of all the land owners whose land is sought to be taken for that purpose is filed with the county clerk.

2. ——— : ——— : THE PROCEEDINGS had under a statute to create a highway should be so definite and certain that a competent surveyor could with the record before him point out its location.

3. ——— : DEDICATION BY DEED. To establish the existence of a highway by dedication by deed it must appear that the grantor was the owner of the land when the dedication was made.

4. ——— : ——— : ACCEPTANCE NECESSARY. Where the acts of the owner of the land are relied on to establish a dedication of land for the purpose of the public road, an acceptance of the same by the public must be proven.

APPEAL from the district court for Jefferson county. Heard below before MORRIS, J.

*A. H. Moulton, Robert Ryan,* and *S. N. Lindley,* for appellant, cited, as to the bill of exceptions, cases referred to in opinion; on the question of jurisdiction: *Robinson v. Mathwick,* 5 Neb., 252; *Doody v. Vaughn,* 7 Id., 28; *S. C. & P. R. Co. v. Washington Co.,* 3 Neb., 41; *Frees v. Ford,* 6 N. Y. 176; *Yates v. Lansing,* 9 Johns. [N. Y.], 437; *Reynolds v. Stansbury,* 20 O., 353; *Wheeler v. Raymond,* 8 Cow. [N. Y.], 314; *Bloom v. Burdick,* 1 Hill [N. Y.], 130; *State, ex rel. Sims, v. Otoe Co.,* 6 Neb., 129; *Morrill v. Taylor,* Id., 246 ; *Beatty v. Beethe,* 23 Id., 210.

*Marvin Warren, pro se,* cited, as to jurisdiction: *Follmer v. Nuckolls County,* 6 Neb., 213; as to dedication: *Graham v. Hartnett,* 10 Neb., 521; Angell, Highways, 142; *Com'rs v. Taylor,* 1 Am. Dec., 649.

*C. B. Letton, contra,* cited, as to the bill of exceptions: *Murphy v. Lyons,* 19 Neb., 694; *Birdsall v. Carter,* 5 Id., 517 ; *Minor v. Tillotson,* 7 Pet. [U. S.], 101; *Mewis v. Johnson,* 5 Neb., 217; *Hogan v. O'Niel,* 17 Id., 641; *Hollenbeck v. Tarkington,* 14 Id., 430.

NORVAL, J.

This is an appeal from the Jefferson county district court. The case was submitted on a motion to quash the bill of exceptions and also on the merits. We will first consider the objections made to the bill of exceptions.

The first ground of the motion alleges that the bill of exceptions was not presented to the defendants until after the time limited by the court for such presentation had expired. The record discloses that the decree appealed from was rendered on the 11th day of April, 1889, and twenty days was given to prepare and serve a bill of exceptions. It does not appear when the proposed bill was served upon the defendants, but the record does show that on the 18th day of June, 1889, the defendants suggested an amendment to the proposed bill. On the day following, notice was served upon the defendants' attorney that on the 26th day of the same month the plaintiff would present the draft of the bill to the trial judge for his approval and signature. On the last named date it was presented; the proposed amendment being agreed to, the bill was signed and allowed.

The defendants having proposed an amendment to the bill of exceptions without making an objection to its being signed by the trial judge, is a waiver of the objection that the same was not presented to the defendants or their counsel in proper time. (*O. & N. R. R. v. Redick*, 14 Neb., 56; *Cheney v. Cooper*, Id., 413; *Smith v. Kaiser*, 17 Id., 186.)

There is another reason why the ground urged for quashing the bill cannot be sustained. There is nothing in the record to show when the term of the district court at which the decree was rendered finally adjourned. The time allowed by statute in which the bill of exceptions is to be presented to the adverse party dates from the adjournment of the court *sine die*. Unless the contrary was

made to appear it will be presumed that the bill was presented in time. (*Nyce v. Shaffer*, 20 Neb., 507; *Wineland v. Cochran*, 8 Id., 528; *First Nat. Bank v. Bartlett*, Id., 319.)

It is also claimed that the bill of exceptions was never filed in the district court. This is not borne out by the record. Upon the back of the bill is indorsed: "Filed June 27, 1889. A. W. Mathews, clerk of district court." There is attached a certificate of the clerk "That the foregoing is the original bill of exceptions in said cause."

It is finally urged "that said bill of exceptions has never been settled or signed by the judge before whom said cause was tried." This objection is based upon the fact that the original allowance of the bill has been lost. It is conclusively shown by the affidavits of Millie Price, A. H. Moulton, and A. W. Mathews, the clerk of the district court of Jefferson county, that Judge Morris, who presided at the trial, settled and allowed the bill of exceptions on a separate sheet of paper, and for want of fasteners it was not securely attached to the bill; that this order, together with the bill of exceptions, was filed with the clerk of the district court, and that afterwards it became lost and cannot be found. There was filed in this court a certificate of the clerk of the district court showing that the bill of exceptions complete, with the allowance thereof by the judge, was filed in his office; that by some means unknown the order of allowance became separated and that he has made diligent and ineffectual search in his office for the same. This uncontradicted showing was. sufficient to admit secondary evidence of the contents of the order of allowance. After the original allowance was lost a copy thereof was filed with the district clerk, to which was attached the affidavit of Millie Price to the effect that it was a full and correct copy of the original; that, as the clerk of the plaintiff in the summer of 1889, she made the same, together with copies of all the pleadings and most of the papers in the case. This copy was attached to the bill of exceptions

when filed in this court. It is not even suggested that it is not a true copy of the original certificate of allowance. The loss of the original and its contents are fully established. The motion to quash the bill of exceptions must therefore be overruled.

This suit was commenced on the 5th day of July, 1887, by Marvin Warren against E. D. Brown, road overseer of road district No. 1, in Jefferson county, to enjoin the latter from removing a certain sidewalk and fence erected by Warren along the front of his premises, which are claimed by Brown to be within one of the public highways of said road district and to obstruct the travel thereon.

The plaintiff insists that the fence and sidewalk do not encroach upon a public road, but are within the corporate limits of the city of Fairbury and upon lands belonging exclusively to the plaintiff.

On September 6, 1887, there was filed a petition of intervention of the county of Jefferson, Fairbury creamery, and Hervey Kanode, setting up the same defense to the plaintiff's action as that interposed by Brown, only stating the facts more fully relied upon to establish a road where the fence and sidewalk are located.

On October 24, 1887, Hervey Kanode filed an affidavit of disclaimer of authority to file the petition of intervention in his behalf and at his request the suit was dismissed as to him. On September 9, 1887, the plaintiff answered the petition of intervention. On November 30, 1887, leave was given to withdraw the petition of intervention on the part of Jefferson county, but it was never in fact withdrawn.

On March 3, 1888, the plaintiff Warren filed a supplemental answer to the petition of intervention and on the same day a summons was issued to the Fairbury creamery and Jefferson county which was subsequently duly served.

Upon the pleadings and evidence the district court found the issues in favor of the defendants and dismissed the petition of the plaintiff.

On the 17th day of May, 1881, W. G. McDowell, J. B. McDowell, and Gertrude McDowell were the owners in fee of the west half of the southeast quarter of section 15, township 2, north of range 2 east, in Jefferson county. The east half of the same quarter section formed a part of the city of Fairbury. Third street of said city is eighty feet wide, runs east and west, abuts upon the east line of the above tract belonging to the McDowells. On the 17th day of May, 1881, the following petition was presented to the board of county commissioners of Jefferson connty for the location of a road, to-wit:

" To the Board of Jefferson County : The undersigned ask that a public road, commencing at the west end of Third street, in Fairbury, Nebraska, running thence west to intersect the quarter section line running north and south between the southwest quarter and the southeast quarter of section No. 15, in township 2 north, of range No. two (2) east, in said county ; thence south on said line and on the quarter section line between the northwest quarter of section twenty-two, in same township and range above mentioned, and terminating where this proposed highway intersects highway road No. 73, located on the quarter section line between the southeast quarter and southwest quarter of section number twenty-two (22), in the township and range above mentioned, be established.

" J. V. SWITZER.

" W. P. FREEMAN.

" L. A. STEVENS.

" C. F. STEEL.

" C. S. HART.

" L. W. HART.

" WM. ALLEN.

" JAS. GOURLEY.

" EMIL LANGE.

" J. W. WALLACE.

" W. W. WATSON."

On the 18th day of May, 1881, the board of county commissioners entered upon its records the following:

"Board met pursuant to adjournment, full board present. Parties owning lands adjacent to the proposed road, commencing at west end of Third street, filed consent and road was located as asked in petition, commencing at west end of Third street, Fairbury, running west to intersect the quarter section line running north and south between the southwest quarter and the southeast quarter of section No. 15, in town 2, range 2; thence south on the quarter section line between the northeast and the northwest of section 22, in same range and town above mentioned, and terminating where it intersects road No. 73, located on the quarter section line between the southeast and southwest 22, town 2, range 2."

On the fifth day of June, 1882, the McDowells conveyed to the Fairbury creamery a tract containing about ten acres in the southwest corner of their land, being described in the deed as commencing at a point two rods east of the southwest corner of the southwest quarter of the southeast quarter of section 15, in township 2 north, range 2 east, running thence north forty-three rods and one link, thence east thirty-seven rods and five links, thence south forty-three rods and one link, thence west thirty-seven rods and five links to the place of beginning.

In 1882 this tract was enclosed by a fence by the creamery folks, the fence on the north side being built on the creamery tract several feet south of an extension of the south line of Third street, as shown by the plat introduced in evidence by the defendant as Exhibit "P."

On February 28, 1884, the McDowells conveyed to D. C. Nutting all of the eghty acres lying north of the land previously sold to the Fairbury creamery, excepting a strip four rods in width lying between the two tracts. The south line of Nutting's land is represented on the plat by the line marked "N line of road according to deed

to Nutting." The same year Nutting constructed a fence parallel to the north line of the creamery fence, leaving a strip of land about sixty feet in width between the two fences. Nutting's fence was placed the same distance south of the south line of his land that the north line of the creamery fence was south of the northern boundary of the creamery tract. It is undisputed that from 1882 until the commencement of this suit in July, 1887, this sixty-foot strip was uninterruptedly used and traveled by the public as a road or highway to and from the city of Fairbury, in connection with Third street. It was each year

graded and worked by the public authorities, and its existence as a public road was by no one questioned.

The McDowells on March 11, 1885, sold and conveyed to D. C. Nutting a strip of land along the south side of his former purchase "to the middle of the public road, running east and west along the north side of the Fairbury creamery." On the 3d day of July, 1885, the two Nutting tracts were subdivided into lots, and were platted as Nutting's subdivision of the west half of the southeast quarter, section 15, town 2, range 2 east, which plat was filed in the county clerk's office of Jefferson county on July 6, 1885. This subdivision was on October 8, 1886, by ordinance duly annexed to the city of Fairbury.

The plaintiff Marvin Warren is the owner of lots 1, 2, 3, 4, 5, 6, 9, and 10, in Nutting's subdivision. These lots all abut upon the traveled highway above referred to. The plaintiff, prior to bringing his suit, had constructed a sidewalk along the front of his lots, but north of the fence erected on the north side of the road, which walk and fence the defendant Brown, as road overseer, threatened to remove, as being within the limits of and obstructing a regularly established public road.

The existence of a legal public road at the point in dispute is absolutely indispensable to defeat the plaintiff's action. A mass of testimony was introduced for the purpose of showing that such a highway was established, extending west from Third street to the quarter section line. One line of testimony tends to show that the north fence of the Fairbury creamery marked the south line of a legal highway, and that the fence erected by Nutting was the north limit of such road. Other testimony was given conducing to show that the south line of Third street, extended west to the quarter section line, is the south line of the legally established road. A third line of evidence was offered and received for the purpose of showing that the legal road is upon the strip four rods wide, lying along the north side of the tract conveyed by the McDowells to the Fairbury creamery. By reference to "Exhibit P" it will be seen that each has the same starting point, the only difference being in the course taken from the west end of Third street.

So far as the acceptance and user by the public bears upon the question of the location and establishment of a highway west of Third street, it points to the land lying between the two fences already referred to. But as the fence and walk complained of are not within its limits, we are not called upon to determine, in this case, whether or not the road as traveled by the public between these fences is a legally established highway. Its validity or invalidity is not now involved.

Did the county board have jurisdiction to make the order of May 18, 1881, establishing the road therein described? The petition praying for its establishment was filed one day prior to the making of the order. It is not claimed that the notice required by section 18 of chapter 78 of the Compiled Statutes was given, or that a commissioner was appointed as provided by section 6; but it is urged that the road was established by consent. The trial court so found. This finding was doubtless based upon the recital contained in the order made by the county commissioners.

Section 37, chapter 78, Compiled Statutes, provides for consent roads. It reads "Public roads may be established without the appointment of a commissioner, provided the written consent of all the owners of the land to be used for that purpose be first filed in the county clerk's office; and if it is shown to the satisfaction of the county board that the proposed road is of sufficient public importance to be opened and worked by the public, they shall make an order establishing the same, from which time only shall it be regarded as a public road."

At the time the order establishing the road was made W. G. McDowell, J. B. McDowell, and Gertrude McDowell were the owners of the land sought to be taken for highway purposes. They did not sign the petition or application made to the board for the establishment of the road, nor did they file in the county clerk's office written consent that their land might be appropriated for that purpose. The filing of such written consent was necessary to confer jurisdiction upon the county board to establish a consent road. Without it their proceedings are a nullity. (*Beatty v. Beethe*, 23 Neb., 210; *Doody v. Vaughn*, 7 Id., 28; *State, ex rel. Sims, v. Otoe County*, 6 Id., 129.)

The evidence shows that J. B. McDowell had a talk with the county commissioners, at or prior to their making the order, about the establishment of a road west of Third

2

street, and orally consented thereto. He insisted on receiving compensation for the land and they refused. Consent not in writing is of no advantage. The requirement of the statute that written consent be first filed is mandatory.

Some importance is attached to the fact that J. B. McDowell and W. G. McDowell presented to the county board on March 3, 1885, a bill claiming $100 damages "for road running west, just north of creamery," etc., which, on the same day, was allowed and paid. We are unable to see how this conferred jurisdiction. Gertrude McDowell was one of the owners of the land. She filed no claim for damages. If the filing of such a claim can be regarded as taking the place of written consent required by statute, so as to give validity to the proceedings of the board had four years before, it could only be held as equivalent to the written consent of those whose damages were paid. The statutes require the written consent of all the owners of the land to be used for the road.

Again, the petition for the road, as well as the order granting the same, leave it indefinite and uncertain as to the location of the road. The starting point, commencing at the west end of Third street, is uncertain. This street is eighty feet in width, while a public highway, created by legislative authority, is but sixty-six feet; here is a difference of fourteen feet.

It is claimed that the south boundary of the highway is the extension of the south line of Third street. Why not start from the north side of the street? We know of no rule that would make the starting point one side rather than the other. This indefiniteness of location doubtless could have been remedied by surveying and staking out the road. So far as the record discloses, this was not done. No monuments were ever established showing its existence and location. The proceedings to create a highway should be so definite and certain that a competent surveyor could, with the record before him, point out its location.

After the commencement of this suit, on August 20, 1887, the McDowells made a quitclaim deed to Jefferson county, for the purpose of a highway, of a strip of land described in the deed as commencing at the west end of the south line of Third street, in Fairbury, Nebraska, thence west on a prolongation of said south line of Third street to the line between the southeast quarter and the southwest quarter of section 15, town 2, range 2; thence north on said line four rods; thence east to a point four rods north of the place of beginning; thence south to the place of beginning. The strip is the same as that designated on the plat as "Road No. 109."

This conveyance cannot in any measure affect Nutting and his grantees. The McDowells had, more than two years before the making of the deed to the county, conveyed to Nutting all the land north of the middle of the public road. The fence and sidewalk in controversy are within the limits of the land described in the deed to Nutting. To establish the existence of a public road by dedication by deed, it must appear that the grantor was the owner of the lands when the dedication was made.

It only remains to be determined whether a public road was created by dedication when the sidewalk was constructed, by the assent of the owner and acceptance of the public. There is at least one element wanting to establish the existence of the road in this manner and that is an acceptance by the public. There never has been any user by the public, or any acts indicating an intention on the part of the public, to appropriate the land for the purposes of travel. On the contrary, all the evidence shows that the entire public travel since 1882 was between the two fences. There being no proof of acceptance by the public, the existence of a highway by dedication was not established. (*Graham v. Hartnett*, 10 Neb., 517.)

It follows that the plaintiff's fence and sidewalk were not within the limits of any legal public highway, and

the road overseer had no right to interfere with or molest the same. The conclusion reached renders it unnecessary to inquire whether the walk is within the corporate limits of the city of Fairbury.

The decree of the district court will be reversed, and a decree will be entered in this court in favor of the plaintiff.

JUDGMENT ACCORDINGLY.

THE other judges concur.