# Richmond

COMMONWEALTH OF VIRGINIA EX REL. STATE HIGHWAY
COMMISSION OF VIRGINIA V. T. D. KINZIE AND WIFE.

January 16, 1936.

Present, All the Justices.

The opinion states the case.

*Chas. S. Glasgow* and *Joseph F. Hall*, for the appellant.

*G. W. Layman* and *Minter & Minter*, for the appellees.

Browning, J., delivered the opinion of the court.

The Commonwealth of Virginia, in this case is seeking to reclaim, for public highway use, and to clear of encroachments a strip of land sixty feet in width, passing through appellees' lands in Botetourt county, Virginia.

This strip of land was acquired in 1849 or 1850 by the Board of Public Works, as president and directors of Southwestern Turnpike Road, the right to which has devolved in legal succession to the State. The acquisition and devolution of title is not brought in question by the appellees. A number of defenses were interposed during the course of the trial in the court below, but, by concessions as to them, the issue is limited to the single contention that the State has not located, with sufficient definiteness, the strip of land which it owns and which it contends is being encroached upon by the appellees.

The court below decreed in favor of the appellees and dismissed the bills, original and amended, filed by the appellant, declaring its case.

The roadway over the strip of land referred to had been in constant use and had been worked for more than seventy years, first by turnpike officials and then by county officials, until 1922, when it was taken over by the State, under its comprehensive highway system. The changes then made are not in issue here and do not affect the sixty-foot strip of land. This strip is thirty feet in width on each side of the center line of the highway as it was in 1922.

The history of the genesis of this road is found in the following Virginia statutes:

General Turnpike Law, Code 1819, chapter 234, p. 211;

Acts of Assembly, 1845-46, chapters 111 and 112;
Acts of Assembly, 1847-48, chapter 141.

Their general provisions provided for turnpikes to be sixty feet wide at least, with a hard surface road in the middle and a dirt road eighteen feet wide on each side. The Southwestern Turnpike Road, a part of which is the road here, was created by the second statute referred to. It was provided that the fee simple title in the width of sixty feet of land should be vested in the Commonwealth and that it should be graded to a width not less than twenty-four feet and macadamized to a width not less than twenty-two feet. This disposition, with eighteen feet of dirt road on each side, comprises the sixty feet width requirement.

It is interesting to note that as far back as 1850 the acquisition of title to this strip of land by the State was recognized by the land owners of Botetourt, along its way, among them being Daniel Kinzie, an ancestor and the predecessor in title of the appellee, T. D. Kinzie. These persons addressed a petition to the Board of Public Works praying that they be not required to move back their fences which constituted an encroachment on the strip of land. In this petition is the following language, in extenuation of their conduct in having so set their fences as to leave for the road only a width of forty feet:

"In doing this they did not intend to deny the right of the Commonwealth to the width of sixty feet which is vested in it by the act aforesaid. * * * Your petitoners admitting distinctly the right of the State to the whole sixty feet whenever she may see fit to take it for the purpose aforesaid."

It is pertinent and informing to note that the said Daniel Kinzie prosecuted proceedings under the Act of 1846 for damages resulting to him from the construction of the Southwestern Turnpike through his farm, in the Circuit Superior Court of Botetourt county. The petition filed by him stated in part "that said road was sixty feet wide passing through his farm a distance of one mile." This

was the same land and substantially the same road as that with which we are concerned. The claimant recovered damages at the hands of a jury and the court.

The Commonwealth, to prove its case, introduced, as witnesses, a number of land owners along, and in the vicinity of, the road. One of them was a gentleman then eighty-six years old, who had a remarkably clear and vivid memory of the original road. He said it was now "right where it always was," with the exception of some "little changes;" that no substantial changes had been made that he was aware of; that the road as used after "turnpike days" followed the same general line of travel that obtained during turnpike days. In a rigid cross-examination he stated that "the farmers got land poor and pushed out on it;" that "it was always kept on the general location." Here is a pertinent question with his answer:

"Q. Say prior to the Civil War in 1861, you couldn't tell just where the road was located, could you, with any degree of certainty?

"A. I know it was on the old location, I know that."

Other witnesses, familiar with the conditions, testified substantially to the same effect. In fact the State's testimony of this nature greatly preponderated.

E. W. Reynolds, a witness, who was a member of the board of supervisors of the county of Botetourt for the period from the year 1912 to 1920, stated that the road as operated by his board followed substantially the way of the old road; that "the county never made any changes over the present road as it was. It was the old rock road which was maintained by the county. So far as I know there never was any change made until the State made it."

The State introduced as evidence a map of the strip of land showing the road as projected through the lands of the appellees. This map is designated Exhibit No. 3. It shows the termini of the segment of the road it portrays; it shows the lines and course of the old road, as encroached upon and as acquired, as well as the same indicia of the present road, as changed by the State in

1922; it shows the outside lines of both ways as well as the lines of the fences as located along the old road; it shows, between red lines, the old road occupying sixty feet of width; it shows crossing roads, the abutting lands of the appellees, and the encroachments of the appellees here complained of. This map was made under the direction of C. S. Charlton, a civil engineer, in the employ of the State, in conformity with the notes of the survey previously made by T. M. Mussaeus, an engineer, previously employed by the State highway department. The map was verified by this engineer. It was based on historical engineering data of the old road supplied by field books which were deposited with the State Highway Commission at Richmond, Virginia. This engineer was asked the following questions:

"Q. Please state what data was taken of the location of fences, location of the old road, the width way between fences, location of creeks, or other natural objects, by you or under your direction along the T. D. Kinzie property?

"A. First, the center line of the new location or proposed location was established, and from that center line as established, accurate measurements were made to all points that related to the topography adjoining, such as fences, the traveled way of the old road, any property lines, or whatever was contained or being or near the center line that would be of interest.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Q. Mr. Mussaeus, I understand from your testimony that prior to the construction of the new highway along the T. D. Kinzie property that there was projected under your supervision a new center line and from this center line, as has been stated, the fences, the used way, creek, etc., were located, and can now be located, and further, that the plat which lies before you, after your examination, and by reason of the fact that the original data is a true statement of what it contains, I want to ask you, can you or any competent surveyor, with the information on which same is based, locate the center line of the old

road as it was prior to the construction of the new Lee Highway?

"A. I can, or they can, anybody can."

This witness was corroborated in material particulars by Engineer Charlton. Their testimony was not gainsaid by the appellees.

The appellee, T. D. Kinzie, admitted that the road as maintained by the county of Botetourt, before the Lee Highway was constructed, was *"very near"* on the same location as the old Southwest Turnpike through his land. He admits that the landowners moved their fences so that the distance between them was such as to reduce the public way from sixty feet to about thirty feet.

The testimony of the State's witnesses, who are engineers, shows that the appellees have encroached upon the strip of land in question by the location of their fences and by the building shown on the map as the "Packing House" which is now used as a cannery, which encroachments are here complained of.

The evidence is abundant to show that the hard surface road maintained by the county tracked the hard surface of the turnpike. The map shows the hard surface of the road when it was under the control of the county.

This evidence is not controverted.

Section 2039 (32) of the Code of 1930 is as follows:

"Where a way has been worked by road officials as a public road and is used by the public as such, proof of these facts shall be *prima facie* evidence that the same is a public road, and where a way has been regularly or periodically worked by road officials as a public road and used by the public as such continuously for a period of twenty years, proof of these facts shall be conclusive evidence that the same is a public road. And in all such cases the center of the general line of passage, conforming to the ancient landmarks where such exist, shall be presumed to be the center of the way, and in the absence of proof to the contrary, the width shall be presumed to be thirty feet."

We think that the evidence in this case makes it plain that the State is entitled to the benefits conferred by this statute, and that, at least, the presumption as to the center of the way fortifies the accuracy of the engineer in adopting the plan which he employed in ascertaining the center of the old road as shown on the map referred to. We do not think that the provisions of the statute are limited only to roads acquired by prescription.

The following cases and excerpts from text-writers show the trend of the courts in dealing with cases similar to this. Applying the facts of this case to the law as there enunciated, the aptness will be readily seen.

In *Barnes* v. *Robertson,* 156 Iowa 730, 137 N. W. 1018, 1019:

"In our judgment there are several reasons why the decree of the trial court must be sustained. In the first place, we think the record conclusively shows the establishment of the road, substantially where it is now traveled, in 1860. That a road was established somewhere across this land at the time is unquestioned; and we think it should be presumed, and, in the absence of a showing to the contrary, found that the road was traveled and worked by the public authorities substantially where it was located by such survey."

*Gilkey* v. *Town of Watertown,* 141 Mass. 317, 5 N. E. 152, 153:

In this case it was said: "They were not laying out a new highway, but were defining the boundaries of and locating anew an old way." And further, "In this case it is clear that the county commissioners intended, in describing the lines of the way, to follow the plan. They made errors in the description; but, taking the whole record, there is no real difficulty in ascertaining the way they intended to lay out. The record itself furnishes the means of correcting the errors, and we are of opinion that the discrepancies relied on by the plaintiff do not render the location invalid."

*Page* v. *Boehmer,* 154 Mich. 693, 118 N. W. 602, 604:

The defense of the insufficiency of the location of a highway, as described in the petition for its establishment, was made.

The court said: "The highest degree of certainty is not required. 'If places are designated which will enable persons familiar with the locality to locate the way with reasonable certainty, the description will be deemed sufficient.'" Elliott on Roads and Streets, section 337.

"In the United States such a right of deviation has, on the strength of early English authorities, been generally acknowledged to exist, without reference apparently to the mode in which the highway became such; and this view has also been taken in Canada." Corpus Juris, volume 29, page 546, section 262.

This section is concerned with the effect of deviations from the established highway because of its becoming impassable from temporary causes.

"If places are designated which will enable a surveyor or persons familiar with the locality to locate the way with reasonable certainty, the description will be deemed sufficient." Roads and Streets (Elliott) page 438, section 380.

In *McDonald* v. *Payne,* 114 Indiana 359, 16 N. E. 795, it was said: "The essential description of a public highway includes its beginning, course, and termination, including its width."

*Dunstan* v. *City of Jamestown,* 7 N. D. 1, 72 N. W. 899, 901:

"If the proceedings under a statute to create a highway are so definite and certain that a competent surveyor, with the record before him, could locate the road, it is sufficient."

*Warren* v. *Brown,* 31 Neb. 8, 47 N. W. 633.

See also, *Lenhart* v. *Wright,* 286 Pa. 351, 133 A. 495, 497; *Borough of Athens* v. *Carmer,* 169 Pa. 426, 32 A. 422; *Furniss* v. *Furniss,* 29 Pa. 15.

It must be borne in mind that here we are not dealing with an action at law, as a suit in ejectment, where we are

circumscribed by the strictest rules of evidence and law, but on the contrary we are in a court of equity, where it is sought to locate a strip of land which was acquired and used for nearly three-quarters of a century for public road purposes, and it is designed by the State to continue so to use it and to prevent encroachments thereon. We are in a forum concerned with a case in which the "highest degree of certainty is not required."

■ It follows that we think that the State has shown with sufficient definiteness the location of the strip of land in question, as to which it has the right to the exclusive use and possession.

We reverse the decree of the trial court and remand the case for the entry of a decree in accordance herewith and in accordance with the prayer of the amended bill filed by the Commonwealth.

*Reversed and remanded.*