Jesse Dale RUBY, Administrator of the Estate of Jesse D. Ruby, also known as J. D. Ruby, deceased; Jesse Dale Ruby; Dola M. Shane; Wyoma C. Brown; Max L. Ruby; and Ceola F. Bell, Appellants (Plaintiffs below),

v.

John W. SCHUETT, Erick J. Ohman and Lynn Tarver, the Board of County Commissioners of Campbell County, Wyoming, Appellees (Defendants below).

No. 2954.

Supreme Court of Wyoming.

March 9, 1961.

Earl Dunlap, Gillette, and R. G. Diefenderfer, Sheridan, for appellants.

Thomas Morgan, County and Pros. Atty. for Campbell County, Gillette, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

On October 1, 1957, the Board of County Commissioners of Campbell County (hereafter called commissioners) acting upon the petition of sixteen residents who desired to have an auto-gate road established across certain lands, including those of Jesse D. Ruby, entered as a part of their proceedings and published in the News-Record, Gillette, Wyoming, the following:

"The Board of the County Commissioners of Campbell County, Wyoming, State of Wyoming, has decided to establish an auto gate road commencing at a point on the Gillette-Savageton-Pine Tree Road 2000 feet south of the southwest corner of Section 29, Township 44, North, Range 74 W., then running in an easterly direction across Sections 32, 33, and to the center of Section 34, thence in a southeasterly direction across the SE¼ of Section 34, and the SW¼SW¼ of Section 35, all in T. 44 N. R., 74 W., 6th P. M. thence in a southeasterly direction across the NE¼NW¼ of Section 2, thence east across the NE¼ of Section 2 and across the N½N½ of Section 1, all in Township 43 North, Range

74 W., to a point where it intersects with the Clarkelen Road in Campbell County, Wyoming, which is the termination of said Road.

"All objections thereto or claims for damages by reason thereof must be filed in writing with the County Clerk of said County before noon on the 6th day of November A. D. 1957, or such road will be established without reference to such objections or claims for damages."

On October 29, Jesse D. Ruby filed with the commissioners an "Objection to Establishment of Auto Gate Road and Claim for Damages" in which he alleged that the description of the road was so indefinite that it could not be surveyed and that the proposal was in the nature of a private road to serve only one or two ranchers who could adequately be served by going from the two highways mentioned in the notice across their own property. He alleged further that the proposed way would constitute a hazard and damage to his property in the amount of $16,180 and stated "which amount is claimed as damages if such auto gate road be established."

Jesse D. Ruby died on February 23, 1958, before any further action had been taken by the commissioners; and his son, Jesse Dale Ruby, administrator of his estate, was served with certain subsequent notices, treated by the commissioners as the party in interest, and later filed the appeal in district court. The property was thereafter distributed to the Ruby heirs, and while the case was pending in the district court, an order was entered substituting these heirs as plaintiffs.

The commissioners appointed three appraisers who on April 12, 1958, appraised the Ruby damage at $90 and on May 7 gave notice that they would accept or reject the appraisers' report on May 19. On June 4 the chairman issued a "Certificate of Right-of-Way-Acquisition" and the next day served a notice on the administrator of the estate to remove a fence from the property in question. On June 6 Jesse Dale Ruby filed notice of appeal to the district court.

After the trial of the cause a judgment was entered on August 3, 1959, dismissing the appeal from the commissioners' decision and increasing the damages theretofore allowed from $90 to $150. On September 2 the plaintiffs filed notice of appeal but did not file a designation of the portions of the record, proceedings, and evidence to be contained in the record on appeal until October 22.

Defendants now argue their motion to dismiss the appeal on the ground that the designation was not filed within the thirty-day period allowed by Rule 75(a), Wyoming Rules of Civil Procedure. Plaintiffs' counsel admit noncompliance with the rule but say that the failure was due to the inability of the reporter to provide the transcript, urging also that the rule is harsh and that some confusion existed regarding the effective version because of an amendment deleting the portion which permitted the district court to extend the time for filing the designation.

As a prelude to any discussion of this subject, it should be said that this court adopted the Wyoming counterpart of the Federal Rules of Civil Procedure, 28 U.S.C.A., at the instance of the Wyoming State Bar and being cognizant of the difficulty in adjusting to new rules has been extremely lenient in applying them, hoping that all might become conversant with them before any litigants were injured by reason of counsel's failure of compliance. However, the time has now passed when this view will be further justified and hereafter there must be careful adherence to all of the provisions of the Wyoming Rules of Civil Procedure. In that connection it may be well to say a word about an attorney's responsibility for keeping abreast of the current rules. All amendments thereof are published in the Wyoming Law Journal which is sent to every law firm in the State. It is thus possible for interested persons to keep the rules up to date in a manner not dissimilar to that employed in the annotation of statutes. It must be assumed that those having matters before the court are fully aware of all rule changes

which have been published in the Wyoming Law Journal, and in the future counsel will not be heard to state the contrary.

The supreme court's advisory committee was convinced that the provisions of Rule 75 were fair and the requirements thereunder desirable. In our experience the general designation need not be based upon a transcript. An appellant should be fully aware of the errors which he charges without being prompted by a study of the transcript. If it were not so, counsel would be asking for consideration which he has not accorded to the trial court. From time to time special situations may arise which without fault of a litigant would create real hardship, and in such instances this court would be willing and able to make exceptions.

Strictly speaking, plaintiffs have presented no good reason for failure to comply with Rule 75(a). On the other hand, this court is for the first time stating its position that a transcript is unnecessary in preparing the designation of contents of the record on appeal; and for this reason perhaps some leniency is justified. The departure from the rule is emphatically disapproved but all of the existing circumstances do not seem to call for the extreme penalty of dismissal of the appeal.

Plaintiffs urge a single point, although it is presented in various ways, i. e., there was noncompliance by the commissioners with the legal requisites for establishing a road and therefore the commissioners were without jurisdiction so that their action was a nullity. They call attention to two statutory provisions:

"24–51. Survey of proposed location for new road; recordation required.—If, upon considering and acting upon the report of the viewer, or otherwise, the board of the county commissioners shall decide to lay out such road, they shall cause the county surveyor to make an accurate survey thereof, if such survey is deemed necessary, and to plat and record the same in the book provided by the county for such purpose; and a copy of said plat and notes of survey shall, without unnecessary delay, be filed in the office of the county clerk."

"24–60. Duties of county commissioners. * * *

*    *    *    *    *    *

"(f) Alteration, etc.; survey of site; recordation of survey.—If, upon considering and acting upon the report of the viewers or otherwise, the board of county commissioners shall decide to lay out or alter any road, they shall cause the county surveyor to make an accurate survey thereof, if such survey is necessary, and to plat the same in books to be provided by the county for such purpose, and the county clerk shall record in the same books opposite or near to such plat so that the same may be easily ascertained to be concerning the platted road, the proceeding of the said board in relation to the location, establishment or alteration of said road, in order to keep in a separate book a record of all the county roads of that county."

Plaintiffs insist that the accurate survey by the county surveyor is an absolute prerequisite to the laying out of a road. Defendants concede that there was no survey by the county surveyor—in fact there had been no county surveyor for many years. They lay great stress, however, upon the words in the statutes "if such survey is [deemed] necessary," insisting in this case that there was previously a road over the same location and that no survey was necessary. This court has previously discussed the legislative policy in the matter of establishment of roads in George W. Condon Co. v. Board of County Com'rs of Natrona County, 56 Wyo. 38, 103 P.2d 401, 407, where Judge Blume said in reference to § 52–201, R.S.1931 (now § 24–1, W.S. 1957):

"* * * The legislature of this state gave the county commissioners until January 1, 1924, to make a rec-

ord of all highways in the county, and provided that 'no other roads shall be highways unless and until lawfully established as such by official authority.' Section 52–201. That indicates a policy that roads should be shown on the records. Other sections of the statute provide for a record or at least a description, filed in the office of the county clerk, of public roads. Sections 52–214, 52–216, 52–226 [now §§ 24–51, 24–52, and 24–50, W.S.1957].

* * *"

■ Under this view, there could be no record until there was a survey. It would follow that the commissioners were wholly without authority in arbitrarily determining that no survey was necessary. It may be said in passing that this holding should not be construed as requiring counties to employ county surveyors since anyone duly qualified in such a profession might properly act in a capacity of county surveyor to comply substantially with the provisions of the statutes requiring an accurate survey to be made. We think that the words "if such survey is [deemed] necessary" were intended by the legislature to apply to situations wherein there was already in existence a survey which might be adopted and utilized.

■ Defendants next suggest that the admitted failure of the commissioners to adhere to the requirements of the statutes in various respects constituted at most irregularities and did not in any way affect the jurisdiction of the commissioners in establishing the road, citing Harris v. Board of County Commissioners of County of Hot Springs, 76 Wyo. 120, 301 P.2d 382. The Harris case was distinguishable from the one at bar in many respects but most importantly in the fact that there a map of the proposed highway was actually on file in the office of the county clerk. A number of cases have discussed the question of insufficient description as affecting jurisdiction. Annotation, 111 A.L.R. 1200, 1207. In general the holdings of such cases seem to be in accord with that stated in Warren v. Brown, 31 Neb. 8, 47 N.W. 633, 636:

"* * * The proceedings to create a highway should be so definite and certain that a competent surveyor could, with the record before him, point out its location. * * *"

■ This court noted in Hyde v. Board of Com'rs of Converse County, 47 Wyo. 101, 31 P.2d 75, 77, that counties exercise a portion of the power of the State government but only those powers granted by the legislature or reasonably implied therefrom. It follows that the authority of the commissioners in establishing a road depends upon the provisions of the statutes relating thereto. In North Laramie Land Co. v. Hoffman, 30 Wyo. 238, 219 P. 561 (affirmed 268 U.S. 276, 45 S.Ct. 491, 69 L. Ed. 953), Judge Blume discussed the question of errors and irregularities as distinguished from jurisdictional defects and indicated that lack of jurisdiction was fatal either in a judicial or a quasi-judicial tribunal.

■ In the instant case there was a failure of the commissioners to cause an accurate survey of the proposed road to be made and there was likewise a failure to comply with the provisions of § 24–52, W.S. 1957, requiring that in the published notice there be a description in general terms of the points and courses of the proposed road. It could scarcely be contended that the general directions contained in the notice and proceedings of the commissioners without points and courses would permit a surveyor to ascertain from the description where the road was to be placed. All persons concerned, including those whose property is to be taken, are entitled to be informed of the land to be occupied by the proposed road. If this action of the commissioners should be allowed to stand, there would be no adequate record of the location of the road. Defendants nevertheless urge that plaintiffs waived the right to question the proceedings by filing a claim for dam-

ages. It should be noted, however, that this was done conditionally, the amount of damage being claimed only "if such auto gate road be established." Moreover, the right to challenge the jurisdiction of a court over the subject matter cannot be waived, and the same rule applies to quasi-judicial bodies. State ex rel. Standard Oil Co. v. Review Board of Indiana Employment Security Division, 230 Ind. 1, 101 N. E.2d 60, 66.

For the reasons stated, the judgment must be reversed.

Reversed.