18370

Leslie W. IRICK, Appellant, v. J. C. ULMER, Respondent

(143 S. E. (2d) 126)

*Messrs. Gressette & Gressette,* of St. Matthews, and *Bryant & Fanning,* of Orangeburg, *for Appellant,*

*Messrs. Horger & Horger,* of Orangeburg, *for Respondent,*

June 30, 1965.

Moss, Justice.

Leslie W. Irick, the appellant herein, instituted this action against J. C. Ulmer, the respondent herein, to recover

damages for personal injuries alleged to have resulted from a collision between an automobile driven by the appellant and a team of mules and a wagon, owned by the respondent, and being driven by one Abraham Moore. The appellant alleges that the said Abraham Moore was an agent and servant of the respondent and was driving the mules and wagon in the scope of his employment and upon the business of the respondent. It is agreed that the collision occurred on September 5, 1960, on State Highway No. 47, about three miles southwest of Elloree, South Carolina. The record reveals that the team of mules and the wagon were being driven in a southwesterly direction on the aforesaid highway and that the appellant driving in the same direction collided with the rear of the wagon.

The appellant, in his complaint, alleges that his injuries were proximately caused by the negligence and willfulness of the respondent, by his agent and servant, in operating the said team of mules and wagon upon the aforesaid public highway without having the animal-drawn wagon equipped with a tail lamp or reflector, or if the same was so equipped, in failing to have such in operation to warn vehicles to the rear of the presence of said team of mules and wagon upon said highway; in causing and allowing the said animal-drawn vehicle to be driven upon the aforesaid public highway when the respondent knew or should have known that it was not equipped with a tail lamp or reflector, as required by Section 46-540 of the Code; in permitting the said animal-drawn vehicle to be operated on a public highway by an inexperienced driver; in failing and omitting to have the said vehicle under proper care and control; and in permitting the said animal-drawn vehicle to be operated in such a manner as to endanger the safety of persons using and traveling upon said highway.

The respondent, by his answer, denied all of the allegations of negligence and willfulness but admitted the ownership of the team of mules and wagon. He specifically denied that the mules and wagon were being driven and operated by Abra-

ham Moore as his agent and servant or that such were being operated in the scope of his employment in behalf of or upon the business of the respondent. The respondent also alleged that appellant's injuries resulted from his own sole and contributory negligence and willfulness, due to his failure to keep a proper lookout, to observe others using the highway, to have his vehicle under control, failure to apply his brakes and driving his vehicle at an excessive rate of speed.

This case came on for trial before the Honorable A. L. Hardee, Special Judge, and a jury, at the 1963 October term of the Court of Common Pleas for Orangeburg County, and resulted in a verdict for the respondent. After the rendition of the verdict for the respondent, a motion for a new trial was heard and refused by the Trial Judge. This appeal followed.

It appears from the testimony that the respondent owns a tract of land containing one hundred and seventy acres adjacent to State Highway No. 47. The respondent testified that for the year 1960 he had a sharecrop agreement with one Sam Moore and by the terms thereof he was to furnish the land, one-half of the fertilizer, the farming implements, including the wagon and team of mules, and the said Moore was to plant, work, harvest and market the crop of cotton and after the payment for the fertilizer, the proceeds of the sale of the cotton were paid by the cotton ginner, one-half to the respondent and the other one-half to Sam Moore. The testimony further shows that the wagon and mules were to be used by Moore solely for the purpose of tending the farm. It was further testified that the respondent exercised no supervision or direction over Moore in the farming operations. At the time of the collision, the wagon and team of mules, owned by the respondent, were being driven along State Highway No. .47 by Abraham Moore, a fifteen year old son of Sam Moore. On the day in question, Sam Ella Oliver, Moore's daughter, had been picking cotton for him and when she had finished

for the day, Moore instructed his son to take her home in the wagon. It was upon the return trip that the collision here involved occurred. The respondent testified that he did not direct Sam Moore or anyone connected with him as to picking of the cotton; that he made no arrangements to get anyone to pick cotton on the premises farmed by Sam Moore nor was the respondent to pay the cotton pickers. He said that he did not direct Sam Moore or anyone else to drive the wagon and mules that were involved in the accident along the highway at any time on September 5, 1960.

The appellant called Sam Moore as his witness. He testified that he was a sharecropper and confirmed the agreement testified to by the respondent and that it was his duty to plant, gather, harvest, which included the picking, and market the cotton that he grew as a sharecropper. Moore admitted that he had a team of mules and a wagon belonging to the respondent but that they were in his possession, pursuant to the sharecrop agreement, for the purpose of tending the farm. On the day of the collision, Moore's daughter was picking cotton for him and he had his son, Abraham, to take her home in the wagon before night. It was his testimony that the respondent exercised no supervision and direction over him in his farming operations. Moore testified that the wagon was not equipped with a tail lamp or reflector.

The appellant called Sam Ella Oliver, the daughter of Sam Moore, as his witness. She testified that she lived a short distance from her father and that on September 5, 1960, he sent for her to come and pick cotton for him. She rode from her home to her father's farm in the wagon here involved. At the end of the day she was sent home by her father. She testified that at the time she went home in the wagon it wasn't dark.

The wife of the appellant testified that the morning following the accident that she had a conversation with the

respondent and that he said "That those people that were involved in the wreck were his workers, they worked for him and that the equipment belonged to him and that he was sorry and that if there was anything that he could do to help me, that he would."

Abraham Moore testified that on the morning of September 5, 1960, on the instruction of his father, that he went to his sister's home driving the mules and wagon and brought her to his father's farm to pick cotton. At the end of the day his father sent him to take his sister home and as he was returning the collision with the appellant took place. He testified that he was driving the wagon on the right side of the road and had the left wheels thereof on the highway and the right side was off. He said that at the time "it was still light." He was asked if he knew that he was not supposed to be out on the road without a light on the wagon. His answer was "No, sir."

E. E. Gasque testified that he was in the cotton ginning business in Elloree, South Carolina, and that he bought from Sam Moore his 1960 cotton crop and paid him for one-half of the purchase price thereof and paid the other half to the respondent.

There is testimony that at the time of the collision the wagon was being driven along the highway "after dark without a light on it." There is other testimony that "it was still light" and still other testimony that "it wasn't black dark but it was good dusk dark."

It appears from the testimony of J. C. Ulmer, Jr., the son of the respondent, that on occasions Sam Moore would consult with him in regard to planting, use of fertilizer, and would be given any other information that would be beneficial in the operation of his farm.

At appropriate stages of the trial, the respondent made a motion for a nonsuit and a directed verdict. These motions were refused and the case was submitted to the jury, and resulted in a verdict for the respondent.

It is the position of the appellant that the Trial Judge erred in charging the jury to the effect that if they found the arrangement which existed between the respondent and Sam Moore to be that of a sharecrop agreement, that the appellant could not recover and their verdict must be for the respondent.

The Trial Judge charged the jury that it was for them to determine what was the relationship that existed between Sam Moore and the respondent in this case. We quote the following from the charge of the Trial Judge:

"Now you are to determine what the facts are in regard to that relationship. A share-cropper, it is said, is nothing more than a laborer or servant of the landlord or master. The master cannot be held liable for the act of one in that relationship, unless at the time of the delict, at the time of the alleged negligent, wilful or wanton act, that at the time of the delict, that person was performing some act, labor or mission at the request of or the command of the appellant as landlord or master. Therefore, it is for you to determine whether or not, under the relationship which existed here, this man, Sam Moore, was a share-cropper and what control was exercised, if any, by his landlord in regard to that.

"Again let me say, a share-cropper is nothing more than a laborer or servant of the landlord or master. A defendant would be liable for the tort of the share-cropper if at the time of the delict, at the time of the alleged negligent act, at the time of a negligent or willful or wanton act, he was performing some act, labor or mission at the request of or the command of the defendant, Mr. Ulmer."

The jury was further instructed that if they should find "that Sam Moore, and his son in driving the mules and wagon on the highway, was not the agent or servant or was not acting for and about the business of the" respondent, they should return a verdict for him.

The appellant, in addition to the question hereinbefore posed by him, argues that the Trial Judge did not fully

charge the jury as to the law concerning the master and servant relationship and now contends that he should have instructed the jury that it could have been implied from the testimony that the servant was performing some act, labor or mission at the request or the command of the respondent.

At the conclusion of the charge, the Trial Judge temporarily excused the jury and gave counsel for the appellant the opportunity to express any objection to the charge as made or to request additional instructions, as required by Section 10-1210 of the 1962 Code. Counsel for the appellant voiced no objection to the charge as given and requested no additional instructions. The failure of the appellant to object to the charge as given or to request additional instructions, when opportunity was afforded to do so, renders questions concerning it unavailable on appeal. *Mahaffey v. Mahaffey,* 236 S. C. 64, 113 S. E. (2d) 72; *Johnson v. Williams,* 238 S. C. 623, 121 S. E. (2d) 223, and *Dudley Trucking Co. v. Hollingsworth,* 243 S. C. 439, 134 S. E. (2d) 399. The aforesaid charge of the Trial Judge, whether right or wrong not being challenged by a proper exception, became the law of the case. *South Carolina Power Co. v. Baker,* 212 S. C. 358, 46 S. E. (2d) 278. The exception posing the aforesaid questions is overruled.

The complaint of the appellant charges negligence on the part of the respondent "in operating and causing to be operated the said animal-drawn vehicle upon the highway of the State of South Carolina by an inexperienced driver." When the respondent made a motion for a directed verdict and such was refused, the Trial Judge announced that he would not submit to the jury the issue of whether the animal-drawn vehicle was being operated by an inexperienced driver, holding that there was no evidence tending to prove this allegation of the complaint. When the Trial Judge completed his charge to the jury, the appellant excepted to his omission and failure to charge the jury as to the wagon being operated upon the highway by an inexperienced driver. The appellant now charges that this was error.

It is the position of the appellant that the respondent is legally responsible to him for the negligent act of his servant. The doctrine of *respondeat superior* rests upon the relation of master and servant. A plaintiff seeking recovery from the master for injuries sustained must establish that the relationship existed at the time of the injuries, and also that the servant was then about his master's business and acting within the scope of his employment. This is not a case in which it is sought to impose liability on the theory that the respondent himself was negligent in turning the wagon over to an inexperienced driver.

As is heretofore stated, the jury returned a verdict in favor of the respondent and such had to be based on the conclusion either (1) that there was no proof of agency; (2) that there was no proof of causal negligence in the operation of the wagon or (3) that the defense of contributory negligence was established. In the light of these implied findings it is immaterial whether the driver of the wagon was experienced or inexperienced and such verdict renders moot and academic the aforesaid question.

The exceptions of the appellant are overruled and the judgment of the lower Court is affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.