20215

LIBERTY MUTUAL INSURANCE COMPANY, Respondent, v. Dinah Taylor GOULD et al., Respondents, v. The SOUTH CAROLINA INSURANCE COMPANY, Appellant.

(224 S. E. (2d) 715)

522

*Robert H. Hood, Esq.,* of *Sinkler, Gibbs, Simons & Guerard,* Charleston, *for Appellant,*

*Robert A. Patterson, Esq.,* of Barnwell, *Whaley, Stevenson & Patterson,* Charleston, *for Respondent, Liberty Mutual Insurance Company,* and *J. W. Cabaniss, Esq.,* of *Grimball & Cabaniss,* Charleston, *for Respondent, State Farm Mutual Automobile Insurance Company,*

*James C. Sanders, Esq.*, of *Dowling, Dowling, Sanders, and Dukes,* Beaufort, *for Respondents, Felix Bobian, and others.*

May 6, 1976.

RHODES, Justice:

This declaratory judgment action was instituted to determine which of three insurance companies afforded liability coverage for claims arising out of an automobile accident. The lower court held that appellant, The South Carolina Insurance Company (Carolina), was required to provide the coverage, and relieved respondents Liberty Mutual Insurance Company (Liberty) and State Farm

Mutual Automobile Insurance Company (State Farm) from any liability as a result of the accident. We affirm.

The issues on appeal are:

(1) Whether Liberty afforded liability coverage to the driver of its named insured's automobile as a permissive user.

(2) Whether Liberty was estopped from denying coverage on the ground of the nonpermissive use of its named insured's automobile.

(3) Whether Carolina afforded liability coverage to the spouse of its named insured.

(4) Whether a witness' credibility may be impeached by showing a prior conviction for involuntary manlsaughter.

(5) Whether the lower court abused its discretion in permitting recross-examination.

The uncontradicted facts giving rise to this action are as follows: In August of 1972, Dinah Taylor purchased a 1972 Dodge Challenger automobile which she insured by adding it to an existing automobile liability policy issued to her by Liberty. In addition, she entered into a written agreement with Edward Allen which stated that she had purchased the Dodge for Allen, and that the monthly payments on the car note would be paid by him. The agreement also provided that Allen was to be the sole user of the automobile, and that it was to be insured by Liberty and garaged at Allen's residence. Allen at the time was living with his aunt, Shirley Bufford.

On September 15, 1972, this automobile, while being driven by Norman Bufford, was involved in an accident with an automobile owned and operated by Felix Bobian. Bobian and Jeremiah Grant, a passenger in Bobian's vehicle, suffered personal injuries, and both automobiles sustained property damage.

At the time of the accident, Norman Bufford was married to Shirley Bufford who had a family automobile policy

with Carolina in which she was the named policyholder. State Farm provided uninsured motorist coverage to Bobian and Grant under its policy with Bobian. All policies were in force at the time of the accident.

Liberty was notified of the accident a few days after it occurred, and undertook the defense of Norman Bufford when personal injury actions were subsequently brought against him by Bobian and Grant. It also paid for the property damage sustained by the two automobiles involved in the accident.

In March of 1974, Liberty notified Norman Bufford that it was, henceforth, handling his defense with a reservation of all rights under its policy with Taylor, by reason of the lack of permission from its named insured to drive the 1972 Dodge on the day of the accident. As a result of Liberty's reservation of rights, Bobian and Grant subsequently notified State Farm of their suits against Bufford and Liberty's denial of coverage. In July of 1974, Carolina was notified of Liberty's reservation of rights and subsequently denied any coverage under its policy issued to Shirley Bufford.

Liberty commenced this declaratory judgment action on September 3, 1974, against the other two insurance companies involved and the individuals mentioned except for Shirley Bufford. While this action was pending, judgments totaling $27,000.00 were obtained against Norman Bufford by Bobian and Grant. Both Liberty and State Farm appeared and participated in the trials of these actions under a reservation of rights. Carolina, however, elected not to involve itself in any manner with the defense of Norman Bufford.

Liberty alleged in its complaint that Norman Bufford was operating the 1972 Dodge, owned by Taylor, without her consent, either expressed or implied, at the time of the accident and, therefore, it afforded no liability coverage to Bufford under its policy. Liberty further alleged that Norman Bufford was married to Shirley Bufford and was a

resident of her household and, thus, insured by Carolina at the time of the accident.

In the alternative, Liberty alleged that if coverage was not afforded by it or Carolina, then State Farm as the uninsured motorist carrier was liable. It asked for an adjudication that it did not afford liability coverage to Norman Bufford and to ascertain the liability of Carolina and State Farm.

Separate answers were filed by State Farm, Carolina, and Bobian and Grant, denying the material allegations in the complaint relative to nonpermissive use by Norman Bufford. Bobian and Grant further alleged in their joint answer that Liberty had waived its rights to deny coverage and was estopped from asserting such denial. In addition, Carolina asserted the defense of estoppel in later stages of this action without objection by any of the other parties.

In the instant action specific questions of fact were submitted to the jury, and the following factual determinations were made by it:

(1) Norman Bufford did not have the express or implied permission of Taylor to drive the 1972 Dodge at the time of the accident.

(2) Norman Bufford did have the permission of Allen to drive the automobile at the time of the accident.

(3) Norman Bufford was a member of the household of Shirley Bufford at the time of the accident.

The lower court held, based on these findings, that Liberty did not afford liability coverage to Norman Bufford because he was not a permissive user of the 1972 Dodge within the terms of its policy. Liberty's policy provided that persons insured with respect to an owned automobile included the following: (1) the named insured and (2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.

As stated by the lower court:

"It thus becomes apparent that there can be no question but that Liberty Mutual owes no coverage to Norman Bufford under the theory of permissive use of the vehicle, as the jury has found that there was no permissive use flowing from Liberty Mutual's named insured, Dinah Taylor Gould [Taylor], to the tortfeasor, Norman Bufford. The law in South Carolina is clear that the permission which puts the omnibus or extended coverage clause of a liability insurance policy into operation must originate in the language of [sic; or] the conduct of the named insured or from someone having the authority to bind him in that respect. *Keller* [*Keeler*] *vs. Allstate Insurance Company*, 261 S. C. 151, 198 S. E. (2d) 793, 1973. The written agreement between Defendants Allen and Gould clearly demonstrates that Defendant Allen had no authority to bind Defendant Gould by giving permission to a third party to use the vehicle."

In exception eight, Carolina charges the lower court with error in holding that the jury had found that there was no permissive use flowing from Taylor to Norman Bufford, and states the error as being that the jury made no specific determination as to who had authority to bind Taylor. We find no error.

The jury found that Bufford did not have the implied permission of Taylor to use the 1972 Dodge and this determination necessarily included a finding that Allen lacked authority to bind Taylor when it is considered that the jury also found that Bufford had permission from Allen to operate the vehicle. There was ample evidence to sustain this finding including not only the written agreement, but also the testimony of Taylor and Allen. Furthermore, the record shows Carolina expressed no dissatisfaction in the lower court with the jury charge or the form and number of questions submitted to the jury relating to the issue of implied permission. It cannot now complain of error as to the completeness of the jury's findings

on this issue. *Wyatt v. Cely,* 86 S. C. 539, 68 S. E. 657 (1910) ; *Irick v. Ulmer,* 246 S. C. 178, 143 S. E. (2d) 126 (1965).

The lower court further held, as a matter of law, that under the instant facts Liberty afforded no coverage to Norman Bufford under a theory of estoppel or waiver. Since neither Bobian nor Grant appealed from any portion of the lower court's order, we only consider the estoppel issue as it relates to Carolina.

Carolina contends the lower court erred in the following particulars in arriving at its conclusion.

(1) In holding that Liberty had informed all parties as soon as it was aware of possible non-coverage.

(2) In holding that Carolina was not prejudiced by the actions of Liberty.

(3) In failing to submit the question of estoppel to the jury.

We affirm on the ground that the record does not show that Carolina was prejudiced and, consequently, do not reach the issues raised by the other two contentions of Carolina. The lower court's order does not clearly reflect that it based its decision on this ground but we can, of course, affirm on any ground appearing in the record. Supreme Court Rule 4, § 8.

At the outset, it should be noted that this appeal does not present any controversy between an insurance company and its named insured. Liberty sought a judicial determination on the question of the nature of the use, whether permissive or nonpermissive, which was being made by the driver of its named insured's automobile at the time it was involved in an accident. Carolina, which was alleged to be the insurance carrier of the driver, contends Liberty was estopped as to it to raise the question of nonpermissive use of the insured's automobile.

Our decisions have applied the doctrine of estoppel in non-coverage cases where the following factors were present: (1) ignorance of the party invoking it of the truth as to the facts in question; (2) representations or conduct of the party estopped which mislead; (3) reliance upon such representations or conduct; (4) prejudicial change of position as a result of such reliance. *Pitts v. New York Life Insurance Company,* 247 S. C. 545, 148 S. E. (2d) 369 (1966).

Carolina was required to show, therefore, that it suffered some detriment as a result of Liberty's assertion of noncoverage. In its brief, it argues detriment is shown from the following facts:

(1) Accident occurred almost two years before it was notified of possible noncoverage.

(2) Property damage had been repaired and paid for.

(3) Liberty had imposed defenses, taken depositions, contacted witnesses, gathered demonstrative evidence, and prepared Bufford's defense.

(4) Will have to satisfy judgments totaling $27,000.00 up to the limits of its policy.

There is no evidence in the record that any of these facts resulted in detriment to Carolina as a result of Liberty's actions. No detriment was shown because Liberty paid for the property damage caused by the accident. On the contrary, Carolina benefited indirectly in having its potential liability reduced and there was no evidence that photographs and descriptions of the property damage were not available even though the damage had been repaired.

There was no evidence that Carolina has been prejudiced by reason of it not having participated in the trials against Norman Bufford under a reservation of rights. But had there been any prejudice to it for such reason, it would have been the result of Carolina's election not to participate and not attributable to Liberty.

We next consider whether Carolina afforded liability coverage to Norman Bufford under its policy issued to Shirley Bufford. This policy provided that persons insured with respect to a non-owned automobile included the following: (1) the named insured and (2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission of the owner and is within the scope of such permission.

"Named insured" is defined by the policy as the individual named in the declarations and also his spouse, if a resident of the same household.

The lower court held that Norman Bufford was included within the persons described under (2) as being insured. Carolina argues that Norman Bufford was not a relative of his wife within the meaning of its policy. However, it is unnecessary to determine the meaning of the word "relative" in Carolina's policy because the lower court's holding is clearly sustainable on the ground that Norman Bufford was a named insured under Carolina's policy. The record shows that it was undisputed that Norman and Shirley Bufford were legally married at the time of the accident. The jury held Norman was also a member of Shirley's household at that time. Therefore, the conclusion is inescapable that Carolina afforded liability coverage to Norman Bufford on the ground he was a named insured under its policy, and we sustain on this ground. Supreme Court Rule 4, § 8.

During the trial, counsel for Carolina sought to introduce records showing that Bufford had pled guilty, almost four years before, to the crime of involuntary manslaughter for the purpose of impeaching his credibility. The lower court refused to permit the introduction of these records.

For the purpose of attacking the credibility of a witness, evidence that he had been convicted of a crime is admissible if it tends to affect his credibility and is not too remote in time. *Gantt v. Columbia Coca-Cola Bottling Company,* 204 S. C. 374, 29 S. E. (2d) 488 (1944). In *Taylor v. State,* 258 S. C. 369, 188 S. E. (2d) 850 (1972), we stated that a prior conviction of manslaughter had no bearing upon the appellant's credibility. No error resulted, therefore, when the lower court refused to allow Bufford's credibility to be attacked by evidence of a prior conviction of involuntary manslaughter.

Carolina also complains of error in permitting State Farm to recross-examine Allen, a witness called by Liberty, on a prior inconsistent statement. The right to, and scope of, recross-examination is within the sound discretion of the trial court. *State v. Singleton,* 179 S. C. 184, 183 S. E. 190 (1936); 98 C. J. S. Witnesses § 429 (1957). After an examination of the record, we fail to find any abuse of discretion.

We have examined all exceptions in the record and any exceptions not specifically treated herein are deemed without merit and are overruled.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.