# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Kaitlin Kimbrell Harper Whitesell, Respondent,

v.

Jeremy Page Whitesell, Appellant.

Appellate Case No. 2017-002601

---

Appeal From York County
Karen S. Roper, Family Court Judge

---

Opinion No. 5771
Submitted June 1, 2020 – Filed August 26, 2020

---

**AFFIRMED**

---

Thomas Franklin McDow, IV, and Erin K. Urquhart,
both of McDow and Urquhart, LLC; and Barrett Wesley
Martin, of Barrett W. Martin, P.A., all of Rock Hill, for
Appellant.

Daniel Dominic D'Agostino and Jacqueline N. Davis,
both of D'Agostino Law Firm, of York, for Respondent.

---

**HEWITT, J.:** This family court case involves requests to modify child support
and custody. Father argues the family court erred by not specifically addressing
which witnesses were credible and why. He also argues that the family court made
several other errors depriving him of a fair trial and that Mother did not properly
plead a claim for attorney's fees.

We respectfully disagree with these arguments. The family court's order reveals the reasons for its decision, and after reviewing the record, we agree with those reasons. This case began with Mother's request to modify child support per a provision in the parties' divorce decree. The lengthy and contentious trial proceeded because Father pursued a request to change the custody arrangement. We agree with the family court's decision to resolve that claim against Father. Given that outcome, we agree it is equitable for Father to pay a portion of Mother's attorney's fees as the family court ordered. We also agree Mother properly pled a claim for attorney's fees. Thus, we affirm.

**BACKGROUND**

Father and Mother married in February 2006. They separated in October 2009 and divorced in March 2011. They are the parents of two girls: Daughter 1, born in July 2006, and Daughter 2, born in March 2008.

Father and Mother met while they were students at York Technical College. They married shortly thereafter. Both Father and Mother went to school part-time after Daughter 1 was born.

This seems to have been a rocky relationship. Father claimed Mother was a habitual liar. Mother claimed Father spent too much time with other female students when he began a full school schedule.

Both parties claimed the other was physically abusive and some of the conduct described in the record is alarming. Father admitted throwing a block through the window of Mother's car and tying an extension cord from the bumper of his mother-in-law's car to the mother-in-law's garage door. The parties were, nevertheless, able to reach a final agreement at the end of their marriage. The divorce decree ratified that agreement.

Two parts of the divorce decree are relevant here. First, the parties agreed to joint physical custody with Mother being the primary custodial parent, subject to the agreed parenting plan. The parenting plan provided Father would have the children from the time school ended on Thursday until 6:00 p.m. on Sunday, every other week, and overnight on the Thursdays during the weeks of his "off" weekend. The decree provided "[b]oth parents will have reasonable and at all times private telephone contact with the children, and the children will be allowed to have reasonable, private telephone contact with either parent."

Second, the parties agreed to deviate down from the DSS Child Support Guidelines and that Father would pay $400 per month in child support. The divorce decree noted both parties were enrolled in college and lacked a steady source of income. The decree explained "[b]ecause of the temporary nature of each party's financial situation, a change in either party's income or any of the other factors taken into consideration in the calculation of child support . . . will be a substantial change of circumstances upon which child support may be recalculated."

Mother filed this case in April 2016—roughly five years after the divorce. She sought an increase in Father's child support.

Father responded and sought more parenting time as well as an order terminating his child support and requiring child support from Mother.

Father claimed Mother would not work with him in co-parenting and was trying to alienate him from the children. His evidence included several disparaging text messages Mother sent him in the months before she filed this case. The messages were insulting and inflammatory.

Mother's chief allegation against Father is prolonged harassment. She claimed her disparaging messages were due to frustration at Father failing to timely pay child support, threatening to "take the girls" if Mother sued for an increase in child support, and failing to timely respond to her questions about the children's education, medical issues, and extracurricular activities.

Mother also claimed Father harassed her by keeping her under constant surveillance. Father, who is himself a private investigator, admitted to hiding under Mother's home in order to eavesdrop. He also, with his father's involvement, had investigators place cameras around Mother's family beach house during Mother's vacation and place GPS trackers on Mother's vehicle and her boyfriend's vehicle. Father also secretly recorded his phone calls with Mother, recorded Mother's calls with the children, and recorded conversations he had with the children. At one point, Father apparently had a physical altercation with Mother's then-boyfriend and was charged with assault and battery.

The family court tried this case for four days in June 2017. Thirteen witnesses testified. The court entered an order in August 2017, roughly two months later.

The family court increased Father's child support to $1,335 per month and ordered Father to pay his support through the clerk of court. The court also ordered Father to pay $20,000 of Mother's attorney's fees. This was slightly less than half of Mother's total attorney's fees. The court denied Father's requests to change custody

and modify the parenting plan.  The court ordered the parties to complete psychological evaluations that had been ordered four months before the trial and explained that the report from those evaluations would be submitted to the court-appointed co-parenting counselor.  This appeal followed.

## ISSUES ON APPEAL

1. Whether the family court erred in failing to directly and specifically address witness credibility.

2. Whether any of Father's numerous alleged errors warrant reversal or combine to deprive him of a fair trial.

3. Whether the family court erred in determining Mother properly pled a claim for attorney's fees and whether the trial court erred in awarding her $20,000 in attorney's fees.

## STANDARD OF REVIEW

In family court appeals, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651–52.  The appellant has the burden of showing this court the greater weight of evidence is against the family court's findings.  *Id*. at 392, 709 S.E.2d at 655.

## WITNESS CREDIBILITY

Father argues that before making findings of fact the family court should have determined witness credibility and made specific credibility findings.  His brief relies on cases explaining the jury's role in judging credibility.  Father also cites cases in which appellate courts have admonished trial courts for issuing orders that lack a sufficient explanation and leave a reviewing court to "grope in the dark."

We agree that witness credibility can be important and that nobody—not the parties, a reviewing court, or anyone else—should be left to grope in the dark for the reasons a family court made a decision.  Rule 26(a) of the South Carolina Rules of Family Court speaks to this by requiring the family court to support its decision

with specific findings of fact and conclusions of law. We know of no authority requiring the family court to give a witness-by-witness account of its credibility assessments. *Epperly v. Epperly* explains an order is sufficient as long as a reviewing court can determine the basis for the family court's ruling. 312 S.C. 411, 414, 440 S.E.2d 884, 886 (1994).

The final order in this case is sixteen pages long. It explains the family court judge reviewed all of the exhibits, considered the testimony, and considered witness credibility. The order also summarizes and explains the rulings on each issue.

Father's core argument centers on Mother's credibility. He believes many examples in the record show Mother as being untruthful. It would be wasteful to list all of these examples here. The basic point is that Father believes Mother is generally dishonest and he asserts that numerous instances reveal this to be true.

Neither the guardian ad litem (the GAL) nor the family court agreed with this characterization. We agree with them. While the record suggests both parties were not always completely forthcoming and transparent with each other, the family court's decision was grounded in its finding that Mother and Father were fit and capable parents despite their substantial difficulties with each other.

A large part of Father's case hinged on the breakdown of a constructive co-parenting relationship. Father claims this breakdown was Mother's fault.

The family court disagreed and found "both parties" contributed to this relationship's deterioration and made co-parenting "extremely difficult." The court conspicuously mentioned that Father had continued conducting surveillance on Mother "[d]espite being divorced for over six years" and ordered Father to "cease to intrude" on Mother's life. The family court likewise ordered Mother to stop directing profane language at Father and suggested she use better self-control.

Father's argument relies largely on his view of the facts as he saw them at trial. When considered against the entire record, however, Father does not show by a greater weight of the evidence that the family court erred. We therefore respectfully reject the argument that the lack of specific credibility findings leads to a different outcome than the one the family court reached.

## CULMINATION OF ERRORS

Father argues that the family court made a variety of specific errors and that even if those alleged errors are insufficient to warrant relief when standing alone, they have combined to prejudice him and deprive him of a fair trial.

As already noted, the family court's decision was driven by a view of the record with which we agree. We will briefly examine Father's alleged errors.

## Psychological Evaluations

Father sought an order requiring Mother to undergo a psychological evaluation. Mother initially opposed the request but consented after Father agreed to pay for it and to be evaluated himself. This agreement was memorialized in an order issued four months before the final hearing. The evaluations were not completed before trial. Father argues the family court should not have decided the case without the evaluations being completed.

The family court addressed this directly, stating the court would hold the record open if it determined the evaluations were necessary for its final decision. After the trial and after considering all the evidence, the family court found Mother and Father were both capable parents, there was no evidence of any mental health disorder, and it did not need the psychological evaluations to rule on custody. The court found the parties would benefit from working with a co-parenting counselor, ordered the psychological evaluations to proceed, and instructed the report from the evaluations be delivered to the co-parenting counselor.

Father argues one judge of the same court cannot overrule another. That did not happen here. The family court judge who tried this case did not overrule the prior order requiring the parties to submit to psychological evaluations. The family court, acting with the benefit of a full record, ordered the evaluations to proceed and specified the report would be delivered to the parties' co-parenting counselor.

## Change of Conditions

Father points to the fact that he and Mother got along relatively well in the period immediately after their divorce and argues their deteriorating relationship constitutes a "change in conditions" warranting a custody modification.

As mentioned above, the family court found Father shared in the fault for this parenting relationship's deterioration. The family court specifically mentioned Mother's harmful conduct, but the family court also noted Mother's conduct was influenced by Father's invasion of her privacy and continued surveillance.

## Equal Parenting Time

Father argues the family court misunderstood his claim to be that the children had been in his custody roughly fifty percent of the time.

In Father's supplemental and amended pleading, he alleged the parties deviated from the divorce decree's parenting plan and that those deviations "resulted in [Father] receiving an average of fourteen (14) overnights per month for the 2015 calendar year." Fourteen nights a month is equivalent to roughly half the year. The family court found both parties substantially followed the parenting plan with Father having the children from Thursday to Sunday and Thursday to Friday on alternating weeks. We agree with the family court that Father did not establish a deviation from the parenting plan that would constitute a substantial change of circumstances.

Father's Income

Father takes issue with the family court's statement in the final order that he "has a far greater income and significantly greater assets at his disposal [than Mother], including over $100,000 in his business bank accounts on December 31, 2016 with no debt associated with the monies." Father asserts that he is only part owner of the private investigation business he shares with his brother and his father and that he has no authority to disperse business funds.

The fact that Father is only a fifty percent owner of the business was not contested at trial. The record also supports the fact that Father is in a superior financial position as compared to Mother. At the time of trial, Mother's gross monthly income was $4,900. She also paid for the children's health insurance and for the cost of daycare. Father's financial declaration at the time of trial showed gross monthly income of $8,500. The evidence showed his business was thriving.

Father also disagrees with the family court's finding that he did not accurately set forth his income until shortly before trial. This conflicts with the testimony of Bernard Ackerman, a CPA who explained in his examination that Father's February 2017 financial declaration did not accurately reflect the overtime, business income, and other profits Father received from his company.

Disparaging Text Messages

Father argues Mother's abusive communications are a sign of a mental health disorder. There is no evidence in the record Mother has a mental health disorder. The GAL issued an extensive report and testified at the final hearing. The GAL believed both parties were capable parents and expressed a desire for the parents "to be able to get along." When the family court specifically asked the GAL about mental evaluations, the GAL explained she had not seen any evidence of a mental health disorder during her investigation.

We also note, as did the family court, that the record suggests Mother's abusive messages were the result of frustration with Father's behavior.

Father also disputes the family court's statement that "[t]he parties do not communicate well, have engaged in disparaging remarks and surveillance, and the protracted litigation has further deteriorated their relationship." Father claims he has never made any disparaging remarks toward Mother.

We do not understand the family court to have found Father disparaged Mother. We believe the family court's decision was informed by its recognition that both parties were at fault for the acrimony in the relationship.

Preference of Children & Alleged Unilateral Decisions

Father argues the family court did not give the proper weight to Daughter 1's wishes or to the fact Mother allegedly made unilateral parenting decisions involving the children.

The family court found Mother consulted with Father on a host of issues and Father did not demonstrate Mother prevented him from participating in decisions affecting the children. The court acknowledged evidence Mother did not inform Father of some of the children's appointments, but the court also noted evidence Mother regularly informed Father of other things and Father would sometimes fail to respond.

Section 63-15-30 of the South Carolina Code (2010) requires the family court to consider a child's reasonable preference for custody when evaluating a child's best interest and to weigh the preference based on several factors. Though the family court's final order did not mention either daughter's preference, the family court discussed them in the extensive oral ruling it delivered at the trial's conclusion. The family court noted Daughter 1 would prefer to live with her Father and Daughter 2 seemed to favor her mother. Despite these preferences, the family court did not believe changing custody would be in the girls' best interest. We agree.

Alleged Poor Supervision

Father disagrees with the family court's finding that he did not present any credible evidence Mother failed to properly supervise the minor children. Father's key evidence involves an incident in which the girls allegedly drove a golf cart around the neighborhood without adult supervision.

Mother admitted this occurred and the GAL stated she believed it was an isolated incident. The GAL additionally noted that even though Father had private investigators following Mother, nothing further was brought to her attention warranting concern as to Mother's supervision.

Cross-examination

Father argues the family court erred in denying his request to re-cross the CPA. Father claims Mother's counsel brought out new matters during the witness's redirect examination.

Rule 611, SCRE, provides "[a] witness may be re-examined as to the same matters to which he testified only in the discretion of the court, but not without exception he may be re-examined as to any new matter brought out on redirect." This argument is reviewed under an abuse of discretion standard. *Liberty Mut. Ins. Co. v. Gould*, 266 S.C. 521, 533, 224 S.E.2d 715, 720 (1976) ("The right to, and scope of, recross-examination is within the sound discretion of the trial court.").

We examined the witness's testimony as well as the exchange between the family court and Father's counsel and see no evidence the family court abused its discretion.

Alienation

Father disagrees with the family court's finding that he failed to demonstrate any pattern of Mother refusing to allow the children to participate in events with him and his extended family.

The family court found the evidence demonstrated the children usually attended Father's family events and missed events, while disappointing, were a normal consequence of conflicting parenting schedules. We agree. There is evidence and testimony showing Mother would arrive early and save seats for both Father and his family members at events such as graduations or gymnastics performances. Mother also testified regarding "extra time" Father would get, explaining "[o]ccasionally if there was a birthday party or, like, when one of the cousins had a birthday party or his family members or if there is a church activity," she accommodated those events and let the children stay the extra night at Father's home until Monday morning.

To be fair, there is evidence Mother may have told Daughter 1 she was not invited to a cousin's birthday party when Daughter 1 was, in fact, invited. Still, the record illustrates Father has a large extended family with many cousins living nearby. We

agree with the family court that scheduling conflicts are inevitable when children are splitting time between multiple homes.

## Camp Cherokee

In the summer of 2016, both Mother and Father attempted to pick the children up from a summer camp. The GAL believed, and we agree, that both parties knew they disagreed over who would be picking up the children and that both parties nevertheless drove to the camp and knew there would be an argument. Father argues the pickup day was one of his days per the parties' written agreement and he never agreed to deviate from that agreement. Mother asserts that both Father and his attorney refused to respond to Mother's questions about the pick-up.

We agree the evidence suggests both parties bear fault for this incident and that the incident does not materially affect the outcome of the issues in question.

## Day Care Expenses

The family court found Mother incurred an average of $60 per month in child care expenses. Father asserts the child support guidelines, when properly applied, call for his child support to be roughly $40 lower per month when day care expenses are adjusted to account for any qualified child care tax credits.

This argument was not presented to the family court and we may not consider it here. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 421–22, 526 S.E.2d 716, 724 (2000). In Father's motion for the family court to reconsider its decision, Father argued the evidence did not establish Mother had $60 per month of work-related day care expenses. He did not argue the family court failed to properly account for those expenses under the child support guidelines.

## Payment Through Clerk of Court

Father does not agree with the family court's ruling that "[d]ue to the history of conflict between the parties regarding whether [Father] has paid timely, payments shall be made through the Office of the Clerk of Court for York County. The record shows there is a history of conflict and arguments over child support. The family court's decision avoids further disputes about these payments.

## Surveillance

Father argues Mother did not seek specific relief regarding surveillance and notes he objected to any testimony regarding his surveillance of Mother.

The family court allowed testimony about surveillance because it believed the testimony might shed light on the parties and how they interacted with each other. The record re-enforces the wisdom of that decision. The GAL expressed concern about the negative relationship between the parents, including Father's regular practice of recording his conversations with Mother. The surveillance and recording practices were an issue with children as well as with Mother. The family court noted Father's continued investigation into Mother was inconsistent with his stated goal of having a positive parenting relationship with her. This is overwhelmingly supported by the record.

To sum, Father has not demonstrated any errors that justify modifying or remanding this case.

**ATTORNEY'S FEES**

Father argues that Mother failed to properly plead a claim for attorney's fees and that the family court did not correctly apply the factors relevant to an award of fees.

Mother specifically requested attorney's fees in her complaint. The sixth numbered paragraph in Mother's complaint was titled "Attorney Fees and Suit Money" and reads, in its entirety, "Plaintiff has a meritorious cause of action. The Plaintiff requests attorney's fees for having to prosecute this action."

We are not aware of any authority suggesting this pleading was deficient. Father cites *Anderson v. Tolbert*[1] and *E.D.M. v. T.A.M.*[2] Neither case supports the proposition that a party in a family court case must plead more than this to state a claim for an award of fees. It also bears mentioning that attorney's fees were plainly identified during the pre-trial hearing as an issue for trial and there was no objection to any claim for fees until the trial began.

When determining whether an attorney's fee is proper, the court considers "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). The amount of fees is determined by: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5)

---

[1] 322 S.C. 543, 473 S.E.2d 456 (Ct. App. 1996).
[2] 307 S.C. 471, 415 S.E.2d 812 (1992).

beneficial results obtained; (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Father disagrees with the family court's findings that Mother had less ability to pay her own attorney's fees, that Mother was the prevailing party, and that many of Father's complaints were exacerbated by his own negative conduct.

We respectfully disagree with these arguments. Father's financial situation is superior to Mother's. We agree he can afford to pay Mother the amount awarded. We also agree Mother was the prevailing party. Mother brought this case for the purpose of modifying child support and succeeded in that endeavor. Mother also prevailed on Father's claim to adjust the parenting plan and child support in his favor. The record amply supports the family court's decision requiring Father to pay Mother $20,000 of the roughly $44,000 in fees she incurred.

**CONCLUSION**

Based on the foregoing, the family court's judgment is

**AFFIRMED.**[3]

**LOCKEMY, C.J., and GEATHERS, J., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.