FREDERICK TAEGER, Appellant, v. J. H. RIEPE *et al.*.

Public Highway: WHERE LOCATED: EVIDENCE. It being uncertain where the exact situation of an established highway is, a finding that. it is the traveled way used and worked as such highway for many years, and with reference to which houses and fences have been built, will not be disturbed, though some facts appear which can not be reconciled with such finding, other facts being equally irreconcilable with any other finding suggested.

*Appeal from Des Moines District Court.*—HON. J. M. CASEY, Judge.

THURSDAY, FEBRUARY 8, 1894.

THE plaintiff is the owner of sixty-six acres of land. in Des Moines county, and one of the defendants is. clerk of the township, and the other is supervisor of the road district in which the land is situated. Defend-ants have heretofore claimed and now claim the right to maintain and improve a public highway across the land of the plaintiff. Plaintiff admits the existence of a. public highway across his land, but avers that it is at. another place than where defendants seek to maintain one, and he brings this action to enjoin them from thus entering upon his land, or diverting the public road from the place where the highway legally exists. The district court dismissed his petition, and from its. judgment he appealed.—*Affirmed.*

*Power & Huston* and *Theo. Guelich* for appellant..

*C. L. Poor* for appellees.

GRANGER, C. J.—Along the line across plaintiff's land, where defendants claim a public highway to be, there has been a traveled road for about forty-five

years, or since 1844. From eighty to two hundred and thirty feet from this line, it is claimed by appellant, there was in 1858 a highway legally established across the land now owned by him, and he brings this action, claiming that such established highway is the only legal one across his land, and hence that the defendants should be enjoined as prayed. The line of the highway as claimed by appellant was surveyed by one A. McMichael, and is spoken of in the record as the "McMichael Survey." This McMichael survey, if where appellant claims it to be, was never opened as a highway. For, from ten to fourteen years before the line contended for by appellees was used as a highway, by being fenced, bridged, and worked, it was used as a highway, and it has been so maintained ever since. Houses have been built with reference to the line as traveled. A plank road was constructed along this line and used for seven years, and then sold to the county. At the time the road, as traveled, was used, worked, and fenced, the land was owned by one Parks. Plaintiff purchased the land in March, 1868. In 1877, one Williams, a surveyor, under a commission from the county auditor and an authority from the board of supervisors "to resurvey all defective roads in the county," says he "resurveyed the road," and made a plat and field notes of the survey made by McMichael. He said in his testimony: "It was impossible to take the McMichael plat and field notes upon the ground, and make an accurate survey from what he had originally done. I made a record of the resurvey in 1877. The road was inclosed by fences to the best of my recollection." On cross-examination, he said: "I think the purpose of the resurvey in 1877 was to get the road correctly platted on the map. The resurvey in 1877 corresponded to the traveled road. Don't know whether it corresponded with the McMichael survey." He says his starting point was forty-six links further

east than the starting point of the McMichael survey. He also said: "The defects in the plat and field notes of the McMichael survey were: *First*, no monuments at the angles; and, *second*, no record of the variations by which the survey was run, and there was a mistake of ten degrees in range two." In April, 1877, because of some contention as to a fence in the road, the county surveyor, Waddle, went there to survey the road. He says: "Think I went out at the request of the road supervisor. I did not attempt to make the survey down to the Taeger place, because it was plain from the start that it would be impossible to locate it with the plat. There were no monuments nor variations at the angles; no record of variations. It was not possible to get the same lines as before, however correct the survey may have been itself originally."

Appellant places much reliance on the testimony of one Steyh, a civil engineer and surveyor, who made a recent survey of the road. He said: "The road can be established from the plat and field notes of its establishment in 1858." On cross-examination, he said: "I did not run the McMichael survey; only platted the lines from the record." He then said, on redirect examination: "From the plat and field notes of the McMichael survey, there is no trouble in finding the location of the road. Only, the surveyor does not give the magnetic variations in his field notes. I do not know what variations he used in running his lines. There would be difficulty in taking the plat and field notes of the survey, and finding the road, if the work was not done accurately, unless some other points had been established in locating the road. McMichael referred to no distinct points. I could take the plat and field notes, and locate the road. Could not say that it would be same road that McMichael surveyed, for the reason that the magnetic variations are omitted. I might run four or five variations, while he might have

used eight or eight and one half. It is often the case that there are slight variations in making surveys. I do not mean to say that there is any defect in the McMichael survey." Recross-examination: "I could not find the magnetic variations in the field notes of the McMichael survey. Neither were there any fixed points in that portion of the road which I surveyed. I did not go all through it. There might have been fixed points further on. I find fixed points in the Wilson Williams survey. In the absence of a record of magnetic variations, I could not be positive as to the accuracy of my resurvey." Against a finding either that the McMichael survey, or the road established in pursuance of it, is where the traveled track now is, or some distance west of it, there are some irreconcilable facts; but it is manifest from the testimony of all of these surveyors that from a record standpoint there is great uncertainty where the road was established. It is true that Steyh says that from the plat and notes there is no trouble in locating the road, but other parts of his testimony show that the statement is to be accepted as largely modified. He says that he "did not run the McMichael survey; only platted the lines from the record." We think the witness intended no more than that he thought the road could be found from the plat and notes. The other surveyors agree that, from an examination of the papers, there seemed no trouble; but, when they attempted to trace the line on the ground with the aid of the plat and the notes, it could not be done, because of the absence of monuments, variations, etc. That there is a highway in that locality is not questioned. Where it is, whether where now traveled or somewhere west of that, we must determine. In view of the undisputed facts of the case as to how the road has been treated as located by all persons in interest, and the great doubt as to the original survey, we do not hesitate to say that the road, as traveled, is the

constituted highway.   Williams, the only surveyor who made a fair test as to the identity of the traveled with the established road, states that, in his opinion, they are substantially the same.   As we have said, there are irreconcilable facts, but no finding can be made that will avoid them.   This finding renders it unnecessary to consider the evidence as to the establishment of the highway by prescription or dedication.   The judgment is AFFIRMED.