B. BARNES v. W. M. ROBERTSON, Road Supervisor, J. H.
   RAMGE and Other Trustees, and ANTHONY L. MAYER,
   Defendants and Appellees, and MARK CHURCHILL and
   LENA CHURCHILL, Appellants.

**Highways:** LOCATION: PRESCRIPTION: EVIDENCE. Where a highway
1 was unquestionably established at some point on the land in
controversy, it will be presumed, in the absence of evidence to
the contrary, that the traveled way and that improved by the
public is where it was originally located. In the instant case
the evidence is held to show, even if the highway was not regularly
established in the first instance, that the public had acquired a
right thereto by prescription, and that there had been a dedica-
tion and acceptance.

**Same:** ESTOPPEL. Where a property owner, because of a highway
2 crossing his land, obtained exemption from taxation of a strip
for that purpose of a certain width, he was thereafter estopped
to deny that the highway of that width.

*Appeal from Washington District Court.*—HON. K. E.
                   WILCOCKSON, Judge.

              TUESDAY, OCTOBER 22, 1912.

THE facts are stated in the opinion.—*Affirmed.*

*Eicher & Livingston,* for appellants.

*Edmund D. Morrison,* for appellee.

SHERWIN, J.—This is an action of mandamus, praying
that the defendant road supervisors be required to remove
obstructions consisting of fences and gates, maintained by
defendants Churchill & Mayer in a highway where it
crosses the S. ½ of section 3, township 74, range 9. After

trial on the merits, there was a decree for the plaintiff, and the defendants Churchill alone appeal.

The appellants are the owners of the E. ½ of the S. E. ¼ and the S. E. ¼ of the N. E. ¼ of section 3, and the defendant Mayer is the owner of the S. W. ¼ of the S. E. ¼ of the same section. The plain-tiff is the owner of the N. ½ of the S. W. ¼ of section 2, township 74, range 9, and his house, where he lives, is on the west forty of his eighty. The section of road in controversy crosses the S. ½ of the S. E. ¼ of section 3 east and west, and the ob-structions that are complained of are fences and gates that are located as follows: At the east and west lines of Churchill's south forty, and a little west of the west line of the Mayer forty. The appellants became the owners of their land by inheritance from their father, Joseph Churchill, two or three years before this action was tried, and their father became the owner of the south forty in 1878. Some time before 1858 a road had been established from a point south of the southwest corner of section 3, and running north of the section line between sections 9 and 10 and 3 and 4 to a point several rods north of the south line of sections 3 and 4, and thence nearly east across the S. W. ¼ of section 3, where it turned northeast and continued northeast across the N. W. ¼ of the S. E. ¼ and the S. E. ¼ of the N. E. ¼ of section 3 to the north-east corner of appellants' north forty. In 1858 this road was resurveyed by one Coryell; and there is no question made but that it was an established county road. In 1860 one S. Farley and others petitioned for a change in this road, "commencing where said road crosses the section line between sections 9 and 10, in township 74, range 9 W.; thence north on said line to the foot of the bluff, and thence east until it strikes the section line between sections 2 and 3; thence north on said line to a point where said road crosses said section line." The statutory requirements

<div style="margin-left:2em">
1. HIGHWAYS: location: pre-scription: evidence.
</div>

relative to the change of roads were strictly followed, and
the commissioner appointed for the purpose filed his report
plat and 'field notes in May, 1860. In July of the same
year, the county court established the change as shown by
the plat and field notes, which were ordered entered on
the road records of Washington county. It does not ap-
pear, however, that the plat and field notes were ever, in
fact, entered on the road records; but the record in this
case discloses that they are now lost, and are not in the
office of the county auditor.

After this change of the road was made, the road run-
ning in a northeasterly direction across section 3 was
abandoned, and the public used the new road, and has con-
tinued to use it for fifty years. It has been worked and
improved by the public authorities, and has, at all times,
been recognized by every one, all of the parties to this
litigation included, as a regularly established highway.
The road north and south of the section line between sec-
tions 2 and 3 extends south only to a point where the road
in controversy turns to the west, and the controversy in
this case relates only to that part of the road that crosses
the S. ½ of the S. E. ¼ of section 3; and, indeed, since
Mayer has not appealed, the controversy is really con-
fined to that part of the road crossing the southeast forty
of the section. The record shows that the traveled road
across this eighty is now substantially where it has been
ever since its location in 1860. For more than twenty-five
years, it has been fenced on the north side thereof across
the Churchill land; and for that length of time, or longer,
the Churchills have recognized it as a road by maintain-
ing gates for the use of the public, which gates were kept
open continuously, except during the stock-pasturing season
each year. A great many years ago, Mayer undertook to
change the course of the road across his forty and to throw
it to the section line on the south thereof; but Joseph
Churchill, the appellants' father, objected to such action,

on the ground that the road had been regularly established where it then was, and should not be changed, and thereupon Mayer abandoned his project. In 1876 the board of supervisors of the county recognized this road, and ordered a resurvey thereof for the purpose of more definitely describing it. One Sargent did the work, and varied the line of road, on paper, from its traveled course; but no one paid any attention to this change, and, as a matter of fact, the road, as changed by Sargent, was never opened or traveled, except at its two ends, where it met the used way. The board did not authorize Sargent to change the road as it was then traveled, but directed him to "resurvey and plat the same."

Another circumstance throwing light on the understanding of all parties in interest, and on the place where the road was, in fact, located in 1860, is found in the fact that some ten or fifteen years ago the elder Churchill and the board of supervisors had some negotiations, whereby the county was to obtain land of Churchill for the purpose of varying the established road near the east line of section 3, so as to avoid the stone hill that the north and south road then traversed.

In our judgment, there are several reasons why the decree of the trial court must be sustained. In the first place, we think the record conclusively shows the establishment of the road, substantially where it is now traveled, in 1860. That a road was established somewhere across this land at that time is unquestioned; and we think it should be presumed, and, in the absence of a showing to the contrary, found that the road was traveled and worked by the public authorities substantially where it was located by such survey. But if this road had not been regularly established and located in 1860, there can be no serious question but that the public long ago acquired the right thereto by prescription. A road had been legally established across this land, and in using the way actually traveled,

and in working and improving the same, the authorities and the public were undoubtedly acting under a claim of a right to such use. And such being the case the right of the public is complete, because the additional elements· necessary to establish a road by prescription are present, as we have already pointed out. The facts, in our opinion, also show a dedication of the way traveled and an acceptance thereof, under the rules announced in *Fountain v. Keen,* 116 Iowa, 406; *State v. Tucker,* 36 Iowa, 487.

The width of this road, as established, was fifty feet. Churchill recognized this width by claiming and receiving

2. SAME: estoppel.

an exemption from taxation of the amount of land so taken and used, and his heirs can not now question the matter. The judgment is— *Affirmed.*