**SHERIDAN COUNTY, Sheridan County Commissioners, and W.B. Frith, Burton Kerns, and Loal R. Lorenzen, individually, Appellants (Defendants),**

v.

**Peggy C. SPIRO, Raymond M. Spiro, and Donis S. Klepinger, Appellees (Plaintiffs).**

No. 84–121.

Supreme Court of Wyoming.

March 15, 1985.

Henry A. Burgess of Burgess & Davis, Sheridan, for appellants.

R.E. Rauchfuss of Beech Street Law Office, Casper, for appellees.

Before THOMAS *, C.J., and ROSE, ROONEY **, BROWN and CARDINE, JJ.

ROSE, Justice.

This is an appeal by Sheridan County, the Sheridan County Commissioners and Commissioners W.B. Frith, Burton Kerns and Loal R. Lorenzen, individually, from a judgment entered against them in the Sheridan County district court in favor of Peggy C. Spiro, Raymond M. Spiro and Donis S. Klepinger, plaintiffs-appellees, who collaterally attacked the establishment of a county road [1] and asked and have received equitable and other forms of relief from the trial court.

Our principal concern is whether—at the time judgment was entered—a certain North Piney Creek roadway (hereinafter "Piney Creek Road") in Sheridan County, which traverses very rough and rugged canyon terrain and where a mountain stream rushes and flows, was or was not an existing county road. If Piney Creek Road, which is the only access to the appellees' properties, was a lawfully established and existing county road at the time of the court's decision, the judgment must be reversed and other issues raised by appellants need not be considered.

## FACTS

On September 10, 1910, under statutory provisions then in force, the county commissioners of Sheridan County undertook to establish the county road in issue here.

The history of the Piney Creek Road reveals that in 1911, one year following its purported establishment, approximately two miles of the west end of the roadway was abandoned by the Sheridan County Commissioners through appropriate statutory abandonment proceedings, leaving the road to terminate approximately three quarters of a mile west of the properties of the appellees (see plat, infra, indicating the location of the Spiro gate). The sole access to the land of the owners known as the North Piney Group, which land lies to the west of the appellees' property, is also by way of the road in controversy here. In 1966 the commissioners received and in 1967 denied a petition to vacate a portion of the road including a section which proceeded through the claimants' properties in the North Piney Creek Canyon. These county-commissioner actions, which have involved various abandonment proceedings, speak forcefully to the effect that the road in issue here has long been regarded by the county commissioners and the public at large as a county road. The record further discloses that the county has maintained the road for many years and has, on numerous occasions, done maintenance work in response to the appeals of the appellees—although admittedly not as well or as often as they and some of the adjoining and otherwise affected landowners would

---

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral argument.

1. In *North Laramie Land Co. v. Hoffman*, 30 Wyo. 238, 219 P. 561, aff'd 268 U.S. 276, 45 S.Ct. 491, 69 L.Ed. 953 (1923), we held that a suit by the owner of land through which a county road is located against the county commissioners is a collateral attack.

have liked.[2] Further, the record shows that the county shaled the road across appellees' property at their request, repaired the bridge where the road crosses the creek, and, as the recognized owner of the road, responded to other of appellees' inquiries and requests concerning the way.

On August 2, 1983, the commissioners considered a petition by Gulf Oil Company to upgrade a bridge over North Piney Creek and improve the Piney Creek Road so that oil-well drilling equipment might be hauled safely. This request was denied. However, on August 9, 1983, the North Piney Group appeared before the commissioners to support Gulf Oil Company's request. It was the position of these landowners that the upgrading of the road would encourage the development of their properties for recreational purposes and would insure wintertime access to their holdings.

On August 10, 1983 the county commissioners met to consider whether the road was a county or private road, but no resolution of the issue was had at this meeting. On August 30, 1983 another meeting was held, and owners of land adjacent to the road (Spiro and Robinson) disputed the county engineer's contention that the road was lawfully established as a county road. Evidence was taken, and the board agreed to hear the matter again.

The board met again in early September to consider the ownership of the road. Nu-merous landowners were present at this meeting, including the appellees who asked that the road west of the Spiro gate be declared a private road or that it be abandoned. The board adjourned, advising they would consult with the county attorney, and on September 7, 1983, by letter to Mr. and Mrs. Spiro, informed them that it was the commissioners' decision that the Piney Creek Road was a duly established and existing county road. This decision was spread upon the minutes of the meeting of the commissioners dated September 13, 1983, which minutes read in part as follows:

" 'The above referenced subject (North Piney Road) was established as a county road on September 6, 1910. We (the Board) have carefully reviewed the records and information available to us as well as public testimony and we are of the opinion that, due to public usage and county maintenance of the road, it is, in fact, a county road. Therefore, it is our determination that the above subject road remains a county road. Consequently, we must insist you remove your private gate and sign before September 15, 1983.' "

When the September 15 deadline, mentioned in the commissioners' minutes, had passed, and the sheriff found the gate referred to above to be locked, thus denying public access, the county road crew undertook to remove it. The gate was replaced by the appellees, and in early October of

2. A January 19, 1968 letter from Mrs. Q.L. Klepinger, one of the appellees here, to County Commissioner Byron Collins states:

"As you recall, a petition was brought before the County Commissioners last May, requesting abandonment of the North Piney road above (west) of a wire gate bordering C.L. Crawford's land in the canyon. * * *

\* \* \* \* \* \*

"Since this is a County road, and since the petition of last May was denied, we assume that the County would plan on at least some maintenance. * * *

\* \* \* \* \* \*

" * * * And incidentally, it is a fact that no one, on any sort of official business, including fire-fighting, of course, has ever been denied access to this canyon by my father, C.L. Crawford, or by us. And this will continue to be the case, regardless of whether or not the road past the gate is abandoned."

A November 29, 1969 letter from Mr. and Mrs. Q.L. Klepinger to County Commissioner Byron Collins says:

" * * * Since the County has determined that the road in question is to remain a County road, then we residents are surely entitled to some maintenance, at least as far as the wire gate.

"If it were not for the unpaid efforts of our neighbor, E.A. Robinson, this road would be impassable for the major part of each winter. But since the road is used year around by seven families, it is not right or just to expect Mr. Robinson to donate his time and equipment to do a job the County should be doing—keeping the road in usable condition."

1983 the commissioners again ordered the county employees to remove the gate. This was accomplished by excavating the gate posts so that the gate would present no further obstruction to travel.

On October 12, 1983, the action out of which this appeal grows was filed and the plaintiffs, appellees here, sought injunctive relief as well as actual and punitive damages. Following a trial of the issues, the court entered a judgment in their favor on April 25, 1984, from which this appeal is taken.

The judgment contains the following language:

" * * * [T]he road in contention in this lawsuit was not established lawfully west of the Spiros' gate at any time by the Sheridan Board of County Commissioners and in any event, any rights that the County may or may not have had in the road were abandoned by the County and that the County never constructed or substantially maintained any roadway on or near that in contention in this lawsuit."

This court cannot agree with the trial court in its decision concerning the establishment, the purported abandonment, and the effect of the variance between the physical location as compared to the surveyor's location of the Piney Creek Road as reflected by the county records.

We will reverse.

*Who Owns the Piney Creek Road?*

**Plat of Roadway in Dispute**

### The Questions for Resolve

The appellants define the principal proposition for our consideration as follows:

"It was an error of law for the District Court to determine the North Piney Road was not a county road and to 'quiet the title to the road west of the Spiro gate' in the Appellees * * *."

We see the dispute raised by this assertion as centering upon a question which asks whether the Piney Creek Road, as it presently appears upon the surface of the ground, is in fact and in law the road which was purportedly established in 1910 as a county road. An answer to this inquiry must necessarily take into account the fact that, notwithstanding appellees' efforts at dominion, the road has, for more than 70 years, been used by the public and, from time to time, maintained and repaired by the County of Sheridan. The response to

the inquiry is further bound to assume that any present or recent survey of the road necessarily will not coincide with the description contained in the county commissioners' final authorizing resolution and that modern-day expert surveyors, with all of their experience and equipment, cannot say whether the road, as it appeared upon the surface of the ground at the time of trial, did or did not track the locations described by the notes of the surveyor who layed out the Piney Creek Road in 1910.

## The Law

Up until the time when, in 1983, Gulf Oil Company petitioned the county to upgrade a bridge and improve the North Piney Creek Road, this roadway was considered and, in all respects, treated as a county road by the County of Sheridan, its citizens and the adjoining landowners, including the appellees and their predecessors in interest. This perception of the road's ownership has prevailed ever since September 6, of 1910, when the Sheridan county commissioners adopted this following resolution:

"It was thereupon duly moved, seconded and carried that the following road, to-wit:—*Beginning at the end of the present County Road being N. 1065 feet,* * * * which road has been designated the North Fork Piney Road, be and the same is hereby established as and declared to be a county road and the same is hereby ordered opened to the use of the public." (Emphasis added.)

### The Commissioners' Resolution

While the appellees do not contend that the proceedings of 1910 were defective for failure to follow the appropriate statutory requirements, they do urge that the resolution of the commissioners, which undertook to finally establish and locate the road, contained a description which fatally varied from the way described by the surveyor's field notes, thus rendering the actions of the county commissioners a nullity.

It is conceded that the plats, maps and relevant writings which are of record in this appeal disclose that the road as platted

from the county commissioners' minutes does not begin "at the end of the present County Road," and thus the 1065 feet figure is in error (see plat, supra). The figure should be 1605, instead of 1065, in order that it comport with physical landmarks, the intent and purpose of the commissioners' formulating resolution and published notice descriptions. That this was simply a transposition error is borne out by the fact that the old road was stated to be 1605 on the official plat and this point represented a definite physical location which has been established on the ground. Consistent with these observations is the testimony of appellees' land surveyor, David Graham, who testified that the discrepancy appears because "[s]omebody reversed the numbers." He went on to say:

"The original legal description calls for 1605 and the minutes call for 1065. It's the zero and the six which are reversed."

It is said in 39A C.J.S. Highways § 94, pp. 801–802:

"Where it is shown that the authorities which established the road had jurisdiction, every presumption thereafter is in favor of the legality and regularity of their proceedings * * *. Also, where ancient records are offered as proof of the existence of a way, all reasonable presumptions are to be taken in favor of their validity."

In matters of this nature, where the establishment of a road or highway is under collateral attack, we have long held that the commissioners enjoy a presumption in favor of the validity of their proceedings. In *Miller v. Hagie*, 59 Wyo. 383, 140 P.2d 746 (1943), we quoted 13 R.C.L. 56, Section 447, to the following effect:

" 'Where the body to which the statute intrusts the matter orders the opening of the way, and in doing so necessarily passes on the facts essential to its jurisdiction, every presumption is in favor of its jurisdiction and the validity of its proceedings on collateral attack.' " 140 P.2d at 750.

We will, therefore, not further concern ourselves with appellees' contention that

the road, the establishment of which was undertaken according to statutes in force in 1910, was a road described by commencing at a point indicated by the erroneous figure contained in the commissioners' resolution. This was simply a transposition printing error, and when the facts upon which the appellees rely are taken into account, they fail to overcome the presumption of legality and regularity of the commissioners' proceedings by which presumption this court is bound.

■ We hold, therefore, that this contention has no viability and does not serve to adversely affect the proceedings of the county commissioners.

Within the context of the facts and law of this appeal, three other issues are presented for our consideration which may be described in the following way:

1. What is the legal effect of a fact situation which shows that present-day land surveyors cannot tell whether the Piney Creek Road across the surface of the land follows the 1910 survey notes? [3]

2. What is the effect of user in ascertaining the existence and location of a county road?

3. What conclusions must be reached as to ownership if it is to be assumed that there does, in fact, exist a variance between the course laid out by the field notes of the 1910 survey and the roadway as it appeared upon the surface of the ground at the time of trial?

*Issue No. 1*

What is the effect of present-day surveyors not being able to tell whether the physical Piney Creek Road follows the course shown by the 1910 survey notes?

It was said in *Merrill v. Hutchins*, 180 Iowa 1276, 164 N.W. 184 (1917), where the location of a road laid out in 1856 was in issue:

**3.** Actually, the evidence reveals that an on-the-ground survey was never made by either side in

" * * * [B]ut it does not follow that every resurvey after long intervals of time is to be accepted as correct, and all highways affected thereby are to be moved to correspond to the latest conclusions of a civil engineer. If such were the case, no highway would ever have a fixed or permanent location, for it seldom happens that two surveys, which attempt to retrace original government lines to any considerable distance, ever fully coincide. That general recognition and public usage of public ways are proper to be considered in such cases, whether it be to ascertain the true line, or to show the existence of a highway dedication or prescription, or to establish an estoppel of the public, see *Orr v. O'Brien*, 77 Iowa, 253, 42 N.W. 183, 14 Am.St.Rep. 277; *Smith v. Gorrell*, 81 Iowa, 218, 46 N.W. 992; *Rector v. Christy*, 114 Iowa 471, 87 N.W. 489; *Heller v. Cahill*, 138 Iowa, 301, 115 N.W. 1009; *Lucas v. Payne*, 141 Iowa, 592, 120 N.W. 59; *Weber v. Iowa City*, 119 Iowa, 633, 93 N.W. 637; *Carter v. Barkley*, 137 Iowa, 510, 115 N.W. 21; *Larson v. Fitzgerald*, 87 Iowa, 402, 54 N.W. 441." 164 N.W. at 185.

The professional land-survey and engineer witnesses in this case testified that it would be difficult, if not impossible, to trace the original 1910 survey; therefore, notwithstanding the plat which was offered and received in evidence and which is reproduced in this opinion, these professional witnesses could not know whether the physical Piney Creek Road and a course described by the original survey notes coincide. Typical of this testimony is that of the appellees' witness, County Engineer Hollingsworth.

Preliminarily, Mr. Hollingsworth testified that there was nothing about his investigation that would lead him to the conclusion that the existing road through the appellees' properties in Section 11 (see plat, supra) was not the same county road which was established by the proceedings of 1910.

preparation for this case.

He then testified that any present survey would not be capable of proving or disproving whether the roadway upon the surface of the ground was the same way as outlined by the notes of the original survey. The county engineer testified on direct examination that he advised the county commissioners as follows:

"I told them that due to the age of the survey that there could be, that there was not any practical way of retracing that survey because it was not tied to a second land corner in any way."

He went on to respond to counsel's questioning:

"Q Okay. Did you make any recommendations to the commissioners to survey or check this problem out?

"A I think my recommendation was that it would be a very expensive job and there probably would not be a significant result because of the inability to trace the old survey accurately.

"Q And it goes back to your original assessment that the notes which were on file in the county you could not survey the road from those?

"A That's right."

On recross-examination, Mr. Hollingsworth testified:

"Q Could you explain further why there is a difficulty retracing the original survey?

"A There are several reasons. The old survey was probably done with—on a magnetic, with a magnetic needle, making the turns to the angles very probable. It was also—it was not tied with any other land corner which makes it impossible to check that work so you are sure when you get to the other end that it ties in properly."

The county surveyor was then asked and he answered:

"Q Considering the difficulty of retracing the original survey because of the difference in methods and other factors described, does that lead you to the conclusion that this is not a county road?

\* \* \* \* \* \*

"A * * * No, it does not."

We have seen that the presumption of the validity of the establishment of the Piney Creek Road favors the authorities who undertook to establish it, and that where ancient records are offered in proof of the existence of a way, all reasonable presumptions are to be taken in favor of their validity. 39A C.J.S. Highways § 94, pp. 801–802. Our opinion in *Miller v. Hagie* (a collateral-attack case), supra, adopts this presumption of validity where the opening of public ways is at issue. In *Board of County Com'rs of Sheridan County v. Patrick*, 18 Wyo. 130, 104 P. 531 (1909), reh. denied 107 P. 748 (1910), where the map and field notes had been on record for more than 20 years and the road had been, for that period of time, publicly used, we held that there would be grounds for a presumption that it had been legally established. As applied to this case, these rules say that, since a resurvey utilizing present-day surveying methods cannot determine whether or not the physical road follows the course described by the 1910 surveyor's notes, the physical road will be regarded in the law to be consistent with the course originally laid out unless the presumption is overcome. This burden becomes the obligation of the appellees.

In *Central Pacific Railway Company v. County of Alameda*, 284 U.S. 463, 52 S.Ct. 225, 76 L.Ed. 402 (1932), where the issue was, in all relevant ways, the same as that which concerns this court, Justice Sutherland, speaking for the Court, said:

" * * * That is to say, the respondents say, the respondents having shown the establishment by the county of a road through Niles Canyon in 1859, the continuing identity of that road must be presumed until overcome by proof to the contrary, the burden of which rests upon the petitioners. *Barnes v. Robertson*, 156 Iowa, 730, 733, 137 N.W. 1018; *Beckwith v. Whalen*, 65 N.Y. 322, 332; *Eklon v. Chelsea*, 223 Mass. 213, 216, 111 N.E. 866; *Taeger v. Riepe*, 90 Iowa, 484, 487, 57 N.W. 1125; *Oyster Bay v. Stehli*, 169 App.Div. 257, 262, 154 N.Y.Supp. 849.

This is in accordance with the general principle that a condition once shown to exist is presumed to continue." 284 U.S. at 468, 52 S.Ct. at 227.

■ The appellees in the case at bar have not discharged their burden of proving that the roadway crossing their property does not follow the 1910 survey since their proof only goes to establish that *their* engineers, using other methods, and not having conducted an actual survey, have platted a course for the roadway which is different than the physical road. This is not sufficient to show that the Piney Creek Road and the 1910 survey are at variance, especially in view of their own expert's testimony to the effect that it cannot be said that the physical road and the 1910 survey do not describe one and the same course.

*Issue No. 2*

What is the effect of user in ascertaining the existence and location of a county road?

■ Not only must it be presumed that the established road still retains its identity until the presumption is overcome by proof to the contrary, but, even if we were to assume the location of the road to be indefinite as the appellees in the case at bar contend, a showing of long public use in the area where the road was purportedly located by statutory officers acting by authority of law will bear heavily in favor of a conclusion that the physical location of the roadway will determine the limits and boundaries of the way.

In 1 Elliott, The Law of Roads and Streets (4th ed. revised and enlarged, 1926), the author states in § 441:

"If the location of the way is indefinite and uncertain, but there has been a user of a way answering in a general manner to the line described, the user will ordinarily determine the limits and boundaries of the road. The line opened by the highway officers, and used by the public without objection from the property owners, may be regarded as the road established, although it may deviate somewhat from the line described in the order. If public user has located a way under color of an order laying it out, the fact that the highway officers charged with the duty of surveying it and of preparing it for the public use fail to discharge their duty will not destroy the character of the way as a public road."

In *Merrill v. Hutchins,* supra, 164 N.W. at 185, the court said:

" * * * It satisfactorily appears that if an engineer were to attempt to retrace the lines given in the original record, following literally and exactly the description there given, the location thus found would not correspond with either the present traveled road or the location to which the defendants propose to move it, and except for the fact that the public for more than half a century have used, accepted, and recognized the present way as the one intended by the order of the court, the proper location would be involved in great, if not insolvable, uncertainty. Under such circumstances, the court ought to and will give much weight to the practical construction which the public generally, the people owning the property immediately affected thereby, and the public officers having charge of the highways have during all these years placed upon said order of establishment. Such was the rule applied in *Taeger v. Riepe,* 90 Iowa, 484, 57 N.W. 1125, and we regard it as reasonable and just."

In *Brammer v. Iowa Telephone Co.,* 182 Iowa 865, 165 N.W. 117, 1 A.L.R. 400 (1917), the telephone company engineer authorized construction upon what appeared to him to be the highway right-of-way but which way the plaintiff alleged was illegally upon his land. In holding that the telephone company was not a trespasser, the court said:

"*Taeger v. Riepe,* 90 Iowa, 484, 57 N.W. 1125, is no warrant for putting defendant into such a position. In that case the landowner claimed that a highway through his land which had been used as a traveled road for 45 years was from 80 to 230 feet to one side of where it should be. To prove this he introduced an old survey in which the magnetic variations

had been omitted, and as to which survey competent surveyors testified they were unable to locate it on the ground from the plat and notes. The decision was just this and no more: That where it is uncertain where the exact situation of an established highway is, a finding that it is the traveled way, used and worked as such highway for many years, and with reference to which houses and fences have been built, will not be disturbed, though some facts appear which cannot be reconciled with such finding, other facts being irreconcilable with any other findings suggested." 165 N.W. at 118.

[7, 8] The rule is, then, that where a way has been established by the appropriate officials under permissive statutes, has been opened for public use, and has, for a substantial period of time, in fact been used by the public on a course which is generally in accord with the line described in the location procedures, the user will in most instances determine the limits and boundaries of the road. Applied to this case, this rule points to a conclusion that the Piney Creek Road, having been laid out in 1910 by the proper authorities under statutes in force at the time, and the public having used the road for more than 70 years, the physically established way will not, absent overriding factors which do not appear in the case at bar, be disturbed by the court in a collateral attack such as that mounted by the appellees here.

*Issue No. 3*

What conclusions must be reached as to ownership if it is to be assumed that there does, in fact, exist a variance between the course laid out by the field notes of the 1910 survey and the roadway as it appeared upon the surface of the ground at the time of trial?

Even if we were to assume that there exists a variance between the 1910 survey and the physical road—all as exemplified by the plat which appears in this opinion, supra—it is the physical road which the law holds to be the established county road.

In this western country, it is more usual than unusual that county roads do not follow the platted course. The appellees' land surveyor testified as follows in the trial court:

"Q Mr. Graham, is it common in your experience for a county road to vary somewhat from the lines laid out by the original surveyor?

"A Yes.

"Q What is the reason for these variations?

"A There could be a number of reasons. One, somebody might have taken a road around a natural obstacle that was more convenient; or a change in the creek might make it necessary to move a road out of what the original survey said it was in. And it may have been a poor survey to begin with. So, any one of those.

"Q Thus, the variations from a survey in the North Piney Creek Road are not unusual; are they?

"A No.

"Q Isn't it true in the surveying profession that a public road is normally recognized as the roadway which is actually occupied?

* * * * * *

"A (By Mr. Graham) I would say so, yes."

Mr. Carl Oslund, the appellees' surveyor and witness, testified on cross-examination:

"Q In your 40 years of experience as a surveyor, have you learned that public roads often do not follow the original surveys?

"A That is correct.

"Q Could you explain to the court why public roads sometimes do not follow original surveys?

"A Mostly because of physical conditions. If I may give an example. Let's take the Powder River. The Powder River in its many, many years has moved from bank to bank, increasing on one and secretions [accretions] on the other.

When we had the secretions [accretions] it would cut into possibly a roadway and the roadway had to be moved and those changes have not been recorded.

"Also, you'll find that condition prevailing where roads were established without study of snows and when the snows do come they found out there was movement. It would be visible.

"You'll also find that many times they went through a creek bottom or a wet bottom where changes were visible.

"Q In your experience, can you tell me how many roads you found in Sheridan County which do precisely follow the original survey?

&ast; &ast; &ast; &ast; &ast; &ast;

"A * * * I can't tell you the number. I will say many.

"Q Do or do not? Many do or do not follow the original surveys?

"A Many do not.

"Q In fact, to your knowledge, there isn't a single road in Sheridan that precisely follows the original survey, is there, to your knowledge?

"A I would say that there probably is not one that does follow it.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q Have you reviewed the county records with respect to the establishment of the North Piney Creek Road?

"A I have.

"Q Do you have an opinion as to whether there is a public road dedicated through the property where the Spiros and Klepingers are?

&ast; &ast; &ast; &ast; &ast; &ast;

"A * * * Yes.

"Q What is your opinion?

"A North Piney Road or the Nameless Road, as it was referred to, was established by the county, by the county commissioners.

"Q Do you have an opinion as to whether that road proceeds through the property of the Spiros and Klepingers?

'A I would judge offhand that it does.

"Q In your opinion, if an existing county road varies from the original survey notes, what would you consider to be the public road?

&ast; &ast; &ast; &ast; &ast; &ast;

"A The road as used."

Walter Pilch, a professional engineer and land surveyor, testified as follows:

"Q. In the course of your experience have you found that county roads tend to follow survey lines without variation?

"A. My experience indicates that they vary generally very considerably, they vary from the original surveys.

"Q. Is it feasible today to follow precisely a survey made 70 or 80 years previously?

&ast; &ast; &ast; &ast; &ast; &ast;

"A. My experience tells me it's, it's almost impracticable or impossible to retrace the original surveys."

Under the statutes in force at the time the Piney Creek Road was established in 1910, the county commissioners were authorized to establish county roads (§ 2514, W.C.S.1910). When a petition to open a road was filed as required by statute, the commissioners were directed to appoint a viewer. If the viewer found the road to be required, and the commissioners decided to lay it out, a survey was to be ordered (§ 2523, W.C.S.1910), and a notice of the location of the road published (§ 2525, W.C.S.1910). Significantly, this notice to affected property owners was duly required to indicate where the road was to commence and then to describe *"in general terms"* (emphasis added) the points and courses thereof (§ 2525, W.C.S.1910).

██ This review of the statutes indicates that the county commissioners had broad, general powers to establish and locate county roads in 1910, and that in the discharge of this authority the surveyor was to utilize the then existing, acceptable surveying procedures to locate the roadway in a manner that would permit a notice to be given to the public and the affected landowners so that all could know in a *general* way—i.e., "in general terms"—

where the road was to be located. Given these authorities and directives, the appropriate rule is:

"It is usually held that a substantial compliance with a statute describing the route of a road is all that is required. *Sale v. Road Dist.* (1923) 156 Ark. 501, 246 S.W. 843; *Currie v. Glasscock County* (1916; Tex.Civ.App.) 183 S.W. 1193; *State ex rel. McGill v. Hamilton County* (1882) 8 Ohio Dec. Reprint, 457, 8 Ohio L.J. 83 (affirmed in (1883) 39 Ohio St. 58); *Stahr v. Carter* (1902) 116 Iowa, 380, 90 N.W. 64." Annot., 63 A.L.R. 516.

It has been held that where there is a variance between the road as it was surveyed and as it was laid out, the road as it was opened and used will control, since it is presumed that a public highway was opened as legally directed. In *Kamerer v. Commonwealth*, 364 Pa. 120, 70 A.2d 305, 307 (1950), the Supreme Court of Pennsylvania said:

"* * * But, in ascertaining the center lines and sides of a highway, it is the road as actually laid out and opened to public travel that determines its location rather than the courses and distances designated by the report of viewers appointed by a court or of commissioners directed by the legislature to lay out and open the highway."

■ Where a party relies upon the position that the establishment of a road by the county is of no force and effect for the reason that the physical way and the way as laid out by the county authorities are in fatal variance, it is that party's burden to overcome a presumption of validity. *Central Pacific Railway Company v. County of Alameda*, supra.

■ Our inquiry reveals that reasonable variations between the original survey and the way the road is laid out upon the ground and used by the public is permissible and that the roadway, as it appears upon the surface, will be held to be the official road. This is particularly true where it is necessary to procure a more practicable route. *Hotovy v. Town of Ulysses Township*, 197 Neb. 16, 246 N.W.2d 718 (1976). Even in the flatlands of Nebraska, where physical obstacles such as mountainous canyon passages, with their changing creek beds, snow and ice erosions and other obstacles such as those with which this appeal concerns itself are not present, the court recognized that variations in order to procure a more practical passageway would not destroy the road's characteristic as a public way, citing as authority *State ex rel. Draper v. Freese*, 147 Neb. 147, 22 N.W.2d 556 (1946); *Richardson v. Frontier County*, 94 Neb. 27, 142 N.W. 528 (1913); *Brandt v. Olson*, 79 Neb. 612, 113 N.W. 151 (1907), on rehearing, 79 Neb. 617, 114 N.W. 587 (1908).

In *Richardson v. Frontier County*, supra, the court said, with reference to a fact situation in which the road, as its pathway traversed the surface, was found to vary from the descriptions approved in the survey:

"* * * The mere fact that the line of road was not in exact accordance with the line prayed for is immaterial." 142 N.W. at 529.

In *State ex rel. Draper v. Freese*, supra, it was shown that the road was assigned to be laid out along the section line. Because of a meandering creek, the placement of the roadway on the section line was highly impractical. Therefore, a deviation for the creek was made by the surveyor and no part of the road described by the authorizing documents was ever made a roadway. In response to a complaint that the roadway was never established since it does not follow the section line, the court said:

"The evidence shows that Rose Creek meanders down the section line and that it would be extremely difficult and very expensive to cross it on the section line. However, the commissioner's report together with the plat and field notes show a deviation from the section line apparently to avoid that very condition. As we have said in *Richardson v. Frontier County*, 94 Neb. 27, 142 N.W. 528: 'It is not essential that a public road be laid out upon the exact line prayed for in the petition, and slight variations in order to

302

procure a more practicable route, are permissible.'" 22 N.W.2d at 560.

After describing the statutory steps to be followed in locating and establishing a road, the court, in *Wallace v. Desha County*, 194 Ark. 848, 109 S.W.2d 950, 951 (1937), said:

"This does not necessarily mean that in the location or establishment of the road that all portions of it shall conform with perfect exactitude to the description called for in the petition. The court may vary from the line to avoid unnecessary inconvenience, unreasonable costs of location or construction, or for other reasons justifiable as may be found and determined upon final hearing. Of course, it was never contemplated that if the line petitioned for ran into a bog or morass where it would be impracticable to build a road at such point, the line might not be varied, or if a massive boulder were found in the line or survey that the road might not be turned aside rather than encounter unnecessary expense, but such variations as these are not substantial, but may be said to be, strictly speaking, another method of locating and establishing the road as petitioned for. Section 132, 29 C.J. 457."

In *Skinner v. State*, Tex.Cr.App., 65 S.W. 1073, 1074–1075 (1901), where the issue was whether the defendant had obstructed a county road in violation of the criminal statutes, and resolution turned on which was the true road, the court said:

" * * * Where the line of a road as actually used by the public differs from the line laid out by the commissioners' court at the time of establishing it, the former is the true road. *Dodson v. State* (Tex. Cr.App.) 49 S.W. 78. It follows, therefore, that the commissioners' court in the present instance did designate the line between appellant and other parties as the line upon which the road should run, but if, as a matter of fact, said road did not run exactly upon that line, though maintained as a public road for a number of years, designated as such by the commissioners' court, worked by hands assigned for that purpose, this would make the land actually used by the public the public road, regardless of whether or not it exactly corresponded with the order of the commissioners' court designating the line."

In *Central Pacific Railway Company v. County of Alameda*, supra, the facts reveal that the county laid a road through the bottom of a canyon in 1859 in compliance with law and subsequently, by authority of land grants from the United States, the railroad was given a right-of-way which embraced part of the land occupied by the highway. By reason of flooding of the creek running down the canyon, the highway was washed out in places. The washed-out areas were abandoned and the road was moved from one side of the creek to the other, where it then coursed upon the railroad right-of-way along lines that were not contemplated when the road was originally established.

The California court had found the question to be this:

" * * * [W]hether there had been such substantial departures from portions of the line of the road established in 1859 as to constitute an abandonment of those portions of that road and the substitution, pro tanto, of a new one so removed in location as to cause it to depend for its legality not upon the original establishment but upon independent facts and considerations." 284 U.S. at 467–468, 52 S.Ct. at 227.

Upon appeal, the United States Supreme Court held that, even though the roadway was moved to the other side of the creek to accommodate the flooding, there had not been such departures from the original road as would prevent the county from relying upon the roadway's original establishment.

*Conclusion*

▪ Given these rules of law as applied to the evidence of appellees' own expert witnesses, and given the terrain which passage is forced to accommodate as the road works its way up the canyon and along

Piney Creek, we find, in the first place, that the record does not establish that the way in question does not follow the 1910 survey. Secondly, under the facts of this case, user clearly puts the established and existing county road through appellees' properties and the road is not a private way as the appellees contend. Lastly, under the facts of record in this appeal, even if the "physical road" and the "road as platted by survey notes" (see plat, supra) are at variance in the eyes of the law, the road as it appears upon the surface must be held to be in substantial compliance with the field notes upon which the commissioners and landowners relied in 1910 when the officials undertook to establish the Piney Creek Road. It follows, then, that the road, as used, is a county road, and that the county officials were within their rights when they removed the gate and exercised affirmative ownership responsibilities with respect to the way in question.

### Abandonment

 The trial court held that any rights that the county may have had in the road were abandoned. There are no proceedings of record in this litigation which support such a finding. In *Board of County Commissioners, Carbon County v. White*, Wyo., 547 P.2d 1195 (1976), we held that, since the traveling public has a vested right in the use of public roads, county roads cannot be vacated without compliance with the appropriate statutes, citing *Board of Com'rs of Sheridan County v. Patrick*, supra, 104 P. at 532. There is no showing in this case that vacation or abandonment proceedings were undertaken in compliance with relevant statutes and there is no citation of authority which supports a contention that the road, once acquired by the county, was or can be vacated or abandoned by failure to adequately maintain or by operation of law. Therefore, since we hold that the road in question was originally established as a county road and it has never been vacated or—as the trial court says—"abandoned by the County," it follows that it still exists as a road owned by the county for the use of the public.

Other issues raised by the appellants need not be addressed in view of our holding concerning the ownership of the road.

Reversed.