# IN THE COURT OF APPEALS OF IOWA

No. 18-1240
Filed July 3, 2019

JAR FARMS LTD, PAUL W. THIESCHAFER, Individually, and PAUL W. THIESCHAFER, AMY THIESCHAFER and PAUL THIESCHAFER as Co-Trustees of the BERNUS A. THIESCHAFER FAMILY TRUST,
    Plaintiffs-Appellees,

vs.

CERTIFIED MATERIALS, INC.,
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Mills County, Jeffrey L. Larson, Judge.

    Certified Materials, Inc. appeals the district court order granting JAR Farms, LTD a prescriptive easement over portions of its property. **AFFIRMED IN PART AND REVERSED IN PART.**

    Aaron F. Smeall, Danielle M. Dring, and Jacob A. Acers of Smith, Slusky, Pohren & Rogers, LLP, Omaha, Nebraska, for appellant.

    Jordan T. Glaser and Leo P. Martin of Peters Law Firm, P.C., Council Bluffs, for appellees.

    Heard by Potterfield, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

This dispute involves a gravel farm access lane that deviates from a thirty-foot ingress/egress easement located on property owned by JAR Farms LTD and onto land owned by Certified Materials, Inc. On appeal, Certified Materials challenges the district court order granting a prescriptive easement over the portions of its property affected by this deviation, claiming JAR Farms presented insufficient evidence of a prescriptive easement. Certified Materials also contends plaintiffs sought a preliminary injunction in bad faith.

**I. Background Facts and Proceedings.**

JAR Farms owns two adjoining tracts of land in Mills County: a northern tract consisting of approximately forty acres (JAR North 40) and a southern tract consisting of approximately 300 acres of land (JAR South 300). Certified Materials owns a four-acre parcel of land abutting the eastern boundary of JAR North 40. Plaintiffs Thieschafer own property abutting the southern boundary of the Certified Material property and the eastern boundary of the JAR North 40. A highway runs east and west along the northern boundaries of JAR North 40 and the Certified Materials parcel. The gravel farm access lane runs north and south along the eastern border of the JAR North 40 and provides access to the JAR South 300 from the highway.[1]

---

[1] This appeal brings to mind the words of Judge Posner:

> Appellate lawyering is an oververbalized activity. There is, as we have remarked before, little appreciation of the power of images even in cases, such as trademark cases, in which visual impressions have controlling legal significance. The appellate lawyer's adage might be, a word is worth a thousand pictures. 'Tain't so.

*United States v Barnes*, 188 F.3d 893, 895 (7th Cir. 1999) (citation omitted). Here, the parties spent pages upon pages in their briefs setting forth legal descriptions of the properties involved but did not include any diagrams or maps. The legal descriptions, one



*A Google Earth map shows an aerial view of the properties and the location of the access lane. The image has been edited to show approximate boundary lines and owners the respective properties.*

---

a page long, look like Greek to anyone but a title examiner. A judge responding to a survey commented: "The use of pictures, maps, and diagrams not only breaks up what can be dry legal analysis; it also helps us better understand the case as it was presented to the trier of fact (who undoubtedly was permitted to see an exhibit while it was discussed." Ross Guberman, *Judges Speaking Softly: What They Long for When They Read*, 44 Litig. 2 (Summer 2018). Truer words have not been written. Images are particularly helpful in analyzing and conceptualizing the facts in real property disputes like the one at hand. *See* Emily Hamm Huseth and Michael F. Rafferty, *A Picture Can Save a Thousand Words, The Case for Using Images in Appellate Briefs*, 4 Judicial Excellence, May 29, 2019, at 5. This court has said, "Visualization of the subject matter of a land or property dispute is critical to a full understanding of the dispute." *Slycord v. Garrett*, No. 13-1192, 2014 WL 1714955, at *7 n.3 (Iowa Ct. App. Apr. 30, 2014). We have included diagrams in our opinions. *See, e.g.*, *Halvorson v. Bentley*, No. 15-0877, 2016 WL 7403703, at *1, *3 (Iowa Ct. App. Dec. 21, 2016); *Albert v Conger*, 886 N.W.2d 877, 881 (Iowa Ct. App. 2016); *Slycord*, 2014 WL 1714955, at *1; *Gartin v. Farrel*, No. 13-0061, 2014 WL 69662, at *1 (Iowa Ct. App. Jan. 9, 2014); *Voga v. Younes*, No. 13-0657, 2013 WL6097977, at *1 (Iowa Ct. App. Nov. 20, 2013). So, why not include a map or diagram in the appellate brief? Although our rules of appellate procedure are silent on the use of images in appellate briefs, they certainly do not prohibit the inclusion of pictures, maps, charts, and other visual images. Inclusion of visuals in the brief eliminates the distraction to the reader of having to leave the brief, open the appendix, and scroll to see the image.

James Goodman is president of JAR Farms, a corporation he formed in 1989. JAR Farms is a "custom farm," meaning it hires operators to do the farming work. Goodman previously owned both JAR Farms properties, acquiring each tract separately. He purchased JAR South 300 in 1981. Because the JAR South 300 is accessible to the highway only through other land, the deed included a thirty-foot permanent easement along the eastern boundary of what is now the JAR North 40 to allow ingress and egress to the highway. A gravel access lane has been in use for this purpose even before Goodman purchased the land. Goodman acquired JAR North 40 in 1997. In December 2010, he transferred both tracts to JAR Farms.

Certified Materials acquired its four-acre parcel in May 2015. In 2016, it began construction on a chain link fence along the boundary it shares with JAR North 40. The gravel access lane used by JAR Farms strays from the thirty-foot easement and onto the Certified Materials land. The record is not clear as to how far the lane strays onto the Certified Materials land or for what distance. Utility poles are located near the centerline of the easement. The record does not indicate when the poles were placed there. Because of the location of the utility poles in the easement, the presence of the fence on the east side of the easement restricts large farm equipment from passing through. MidAmerican Energy indicated it would charge Goodman (JAR Farms) $19,447.91 to remove three of the poles, reinstall two poles, and bore in 435 feet of conduit.



*Looking North, Exhibit 12 shows the location of the fence built by Certified Materials in relation to the access lane.*

On November 14, 2016, JAR Farms filed suit in district court seeking an injunction to stop Certified Materials from continuing construction on the fence. It also asserted it was entitled to a prescriptive easement or boundary by acquiescence. The district court entered an order granting injunction the same day. After bond was posted, the court issued a temporary writ of injunction on November 23, 2016. Certified Material was served on November 25th. Certified Materials moved to dissolve the injunction and also filed an answer and filed counterclaims asserting, among other things, that JAR Farms sought the injunction in bad faith, the injunction was wrongfully granted, and sought damages. The court dissolved the injunction on January 24, 2017. Following a trial to the bench, the

district court found that JAR Farms established a prescriptive easement over "a portion of the western edge of the property currently owned by Certified Materials," and it granted JAR Farms a thirty-foot easement "to be measured from the utility poles nearest Certified Materials property." Certified Materials appeals.

## II. Scope and Standard of Review.

The parties agree this action was tried in equity and, therefore, our review is de novo. *See Orr v. Mortvedt*, 735 N.W.2d 610, 613 (Iowa 2007); *see also* Iowa R. App. P. 6.907. On de novo review, we examine all the facts and the law to decide the issues anew. *See Brede v. Koop*, 706 N.W.2d 824, 826 (Iowa 2005). "Thus, we are not bound by the trial court's findings of fact, but give them weight in our decision because of the trial court's opportunity to view the evidence and witnesses firsthand." *Kolb v. City of Storm Lake*, 736 N.W.2d 546, 553 (Iowa 2007).

## III. Prescriptive Easement.

"Under Iowa law, an easement by prescription is created when a person uses another's land under a claim of right or color of title, openly, notoriously, continuously, and hostilely for ten years or more." *Johnson v. Kaster*, 637 N.W.2d 174, 178 (Iowa 2001). JAR Farms has the burden of proving these elements "by evidence that is clear, convincing, and satisfactory." *Webb v. Arterburn*, 67 N.W.2d 504, 514 (Iowa 1954). The facts establishing the existence of a prescriptive easement "must be strictly proved"; they cannot be presumed. *Brede*, 706 N.W.2d at 828. Whether the evidence supports the requirements of a prescriptive easement is determined on a case-by-case basis. *Johnson*, 637 N.W.2d at 179.

Evidence tending to show hostility and claim of right to satisfy the requirements of a prescriptive easement is of a similar nature. Hostility of possession does not imply ill will, but only an assertion of ownership by declarations or acts showing a claim of exclusive right to the land. However, mere use of land does not, by lapse of time, ripen into an easement. A party claiming an easement by prescription must prove, independent of use, the easement was claimed as a matter of right.

Though mere use does not constitute hostility or claim of right, we have held certain acts, including maintaining and improving land, can support a claim of ownership and hostility to the true owner.

*Id.* at 178-79 (citations omitted). Additionally,

Under Iowa law the owner or the grantor is required to have "express notice" of any claim of adverse possession. This requirement exists to help place the true owner of land on notice of the adverse use of the land by another. This requirement "ensure[s] the landowner knows another's use of the property is claimed as a right hostile to the landowner's interest in the land. Otherwise, the landowner may incorrectly assume the other's use results merely from the landowner's willingness to accommodate the other's desire or need to use the land." The notice must be actual or "from known facts of such nature as to impose a duty to make inquiry which would reveal the existence of an easement." "The law imputes to a purchaser such knowledge as he would have acquired by the exercise of ordinary diligence. Thus, where the easement is open and visible, the purchaser of the servient tenement will be charged with notice . . . ."

*Id.* at 180 (citations omitted).

Certified Materials raises a number of arguments in support of its position. We focus on the one we find dispositive—lack of express notice of claim of right.

To establish a claim of right, JAR Farms must show more than just use of the land for the statutory period. *See Brede*, 706 N.W.2d at 828. Rather, the evidence must show the owner of JAR North 40 claimed an easement as a matter of right and the owner of the land to the east had express notice of the claim of right. *See id.* "This notice may be actual or established by known facts of such a nature as to impose a duty to make inquiry which would reveal the existence of an

easement." *Id.* (cleaned up). Whether the express-notice requirement was complied with turns on the particular facts of the case.

Alvin Gavin owned the four-acre parcel for forty years before selling it to Certified Materials. Gavin testified that he knew people used the rock road the entire time he owned the property. He never spoke to any of the users.[2] Gavin never spoke with Goodman during the thirty years that Goodman owned the JAR 300 South. Under these facts, JAR Farms did not establish by clear and convincing evidence that an express notice of a claim of right was ever communicated by users of the lane to Gavin.

Mere use does not establish a notice of claim of right required by Iowa Code section 564.1 (2016). *Johnson*, 637 N.W.2d at 178-79. "It must be established that the servient owner had express notice of the claim of right, not just the use of the land." *Brede*, 706 N.W.2d at 828. This is because Gavin may have assumed the other's use of the lane resulted from his "willingness to accommodate the other's desire or need to use the land." *See Larman v. State*, 552 N.W.2d 158, 162 (Iowa 1996).

To be sure, the requisite notice may be established "from known facts of such [a] nature as to impose a duty to make inquiry which would reveal the existence of an easement." *Anderson v. Yearous*, 249 N.W.2d 855, 861 (Iowa 1977). Certain acts, including maintaining and improving land, can support a claim of ownership. *See Johnson*, 637 N.W.2d at 179 (finding a claim of right had been established where claimants' mobile home extended forty feet onto disputed

---

[2] Gavin did give Paul Thieschafer permission to use the road some seven or eight years before the trial.

property, claimants tore out trees and a house on the disputed property, used a garage on disputed property, mowed and generally cleaned up property, and "treated the disputed property as any other owner of real estate might do").  In *Collins Trust v. Allamakee County Board of Supervisors*, 599 N.W.2d 460, 463 (Iowa 1999), the county claimed a prescriptive easement in a road.  The county had "removed downed trees, placed gravel in wet spots, installed culverts to improve drainage in the area" of the disputed road.  *Collins Trust*, 599 N.W.2d at 462.  The supreme court concluded the expenditure of public funds in this manner was "of such a nature to support the public's claim of ownership."  *Id.* at 465.  Likewise, in *Barnes v. Robertson,* 137 N.W. 1018, 1019 (Iowa 1912), the supreme court held the county acquired a road by prescription because it was used, worked, and improved, the public was acting under a claim of right.  In *Lynch v. Lynch*, 34 N.W.2d 485, 490 (Iowa 1948), a claim of right was found where party set out trees, erected a house and outbuildings, enclosed the premises by fence, cultivated the land, and in all respects treated land precisely as his own.  Here, we cannot conclude that Goodman's periodic rocking[3] of part of the lane rose to a level so as to have imposed a duty on Gavin to make inquiry which would reveal the existence of an easement.  *See Brede*, 706 N.W.2d at 829 (holding the occasional placement of gravel and grading of a gravel driveway were not acts "independent of the use of the road").

---

[3] The record is not clear as to how often Goodman put rock on part of the lane.  When asked how often he put rock down, Goodman only responded that it had been three years prior to trial that he put rock on the lane.

Under the record presented, JAR Farms failed to establish by clear and convincing evidence that express notice was given to Gavin of any claim of right to any portion of the land now owned by Certified Materials. The lack of this requisite element is fatal to JAR Farms's claim to a prescriptive easement. We therefore reverse the district court on this issue. We need not address the other arguments on this issue made by Certified Materials.

**IV. Temporary Injunction.**

Certified Materials argues the trial court erred in dismissing its counterclaims concerning issuance of the temporary injunction. It asserts "the trial court impermissibly ignored unrefuted testimony to find that plaintiffs had not sought a preliminary injunction in bad faith." It argues,

> All of this uncontroverted evidence exhibits that not only did Plaintiffs fail to follow the procedural requirements necessary to obtain a temporary injunction, but that Plaintiffs acted with complete disregard of the elements necessary to obtain such an injunction, yet were granted the injunction anyway.

Certified Materials asks for a reversal on this issue with a remand to determine the amount of damages due it.

The district court found:

> Contracts for which [Certified Materials] was relying on in their claim for damages were contracts with and any damages would be claimed by Certified Ready Mix, which is not a party to this lawsuit. [Certified Material]'s counterclaim also relied on damages to C-Max, which is also not a party to this action. Finally, [Certified Materials] seek damages for losses by Kurt Wiekhorst, one of the owners of defendant Certified Materials. Kurt Wiekhorst is not a party to this action. The evidence further showed that no damages claimed by [Certified Materials] were a result of or caused by the injunction obtained by plaintiffs in this action. The injunction was in place from November 23, 2016 to January 24, 2017, and restricted the [Certified Material]'s ability to work on the concrete plant. Evidence showed that [Certified Materials] did not have a permit for the plant

construction from Mills County, Iowa until December 20, 2016. In reality, [Certified materials] was kept from working on the concrete plant from December 20, 2016 (when the building permit was issued) and January 24, 2017 (when the injunction was lifted). [Certified Materials]'s witness, Justin Frauendorfer, testified that in his calculations, there were five or six working days during that period where the weather was not too cold or too wet for construction work. [Certified Materials] is now claiming that that delay caused [it] to suffer damages for an additional 18 months after the injunction was lifted. The Court finds testimony from [Certified Materials] with regard to loss of potential business to be speculative at best and, frankly, not credible.

The Court further finds that the plaintiff did not intentionally interfere with any of [Certified Material]'s contracts, and the injunction plaintiffs sought out and received was done with a legitimate concern regarding the easement at issue. The Court further finds that the alleged interference by plaintiff did not cause [Certified Materials]'s non-performance of any contracts, nor did it make it any more expensive for defendant to fulfill any contracts.

Upon our review, we find no reason to disagree with the district court on this issue. Accordingly, we reject the claim that JAR Farms sought a temporary injunction in bad faith. We therefore affirm the district court on this issue.

### V. Appellate Attorney Fees.

Finally, JAR Farms requests an award of $17,101.88 in appellate attorney fees. The right to recover attorney fees is purely statutory. *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines, Inc.*, 510 N.W.2d 153, 158 (Iowa 1993) ("A party generally has no claim for attorney fees as damages in the absence of a statutory or written contractual provision allowing such an award."). JAR Farm fails to cite any statute authorizing such an award here. We decline to award appellate attorney fees.

### AFFIRMED IN PART AND REVERSED IN PART.